931 So.2d 1163 (2006)
Vinod Kumar DAHIYA
v.
TALMIDGE INTERNATIONAL LTD., Neptune Shipmanagement Services (PTE), Ltd., American Eagle Tankers, Inc., Ltd., American Eagle Tankers Agencies, Inc. and The Britannia Steam Ship Insurance Association Ltd.
No. 2005-CA-0514.
Court of Appeal of Louisiana, Fourth Circuit.
May 26, 2006.
Rehearing Denied June 30, 2006.
*1165 Kevin C. O'Bryon, Sherri L. Hutton, O'Bryon & Schnabel, PLC, New Orleans, LA, for Plaintiff/Appellant.
Gary A. Hemphill, Terriberry, Carroll & Yancey, L.L.P., New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS SR., and Judge EDWIN A. LOMBARD).
CHARLES R. JONES, Judge.
This matter results from the district court's judgment in favor of the plaintiff, Vinod Dahiya, in the total amount of $579,988.00, and against the defendants, Talmidge International, Ltd., Neptune Shipmanagement Services (PTE.), Ltd, and American Eagle Tankers Agencies, Inc. Prior to rendering judgment in this matter, the district court denied the defendants' Exceptions of No Right of Action, and Improper Venue, finding that a Louisiana statute that nullifies forum selection clauses in contracts of employment preempts federal law, specifically, The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter "the Convention"), an international treaty of the United States. Having reviewed the record before this Court, the judgment in favor of the plaintiff, Vinod Dahiya, is reversed, and this matter is remanded to the district court.

FACTS
This is a maritime personal injury case in which the district court awarded damages for extensive burn injuries suffered by a seaman, Mr. Dahiya, in the service of his vessel. Mr. Dahiya is a citizen of India. In 1999, he applied for a job with Singapore-based Neptune Shipmanagement Services (Pte., Ltd.) (hereinafter "Neptune"), was hired, and signed a contract of employment or "deed" that specified the terms and conditions of his employment. Neptune then paid for Mr. Dahiya to be sent to a maritime training school and eventually employed him on the M/V EAGLE AUSTIN, a Singaporean flag vessel, as an engine room cadet.
The incident which gave rise to this litigation occurred on the vessel in November 1999, while Mr. Dahiya was operating an incinerator in the engine room. The cause of the incident was contested at trial, but the district court found that the cause of Mr. Dahiya's burn injuries was Neptune's negligence and the Eagle Austin's unseaworthiness. Judgment was entered against Neptune and against Talmidge International, Ltd., the vessel owner.[1] These liability findings are not contested on appeal.
The accident occurred while the vessel was on the high seas in international waters. Because the vessel was en route to Louisiana at the time, Mr. Dahiya was transported to the burn unit at the Baton Rouge General Medical Center where he received medical care for approximately 30 days before being repatriated to his home in India. His employer paid all medical and travel expenses, so at trial there was no claim for past medical expenses.
Mr. Dahiya returned to Louisiana in 2001, when he came here on a student visa. He subsequently filed suit in 2002. While *1166 this suit was pending, Mr. Dahiya's status with the United States Immigration and Naturalization Service became tenuous because of his failure to maintain his status as a student. Whether Mr. Dahiya has been permitted to return to the United States as of this time is not of record.

PROCEDURAL HISTORY
Although the legal issue before this Court is relatively narrow, the procedural history of this case is fairly convoluted. Mr. Dahiya filed suit in the 25th Judicial District Court for the Parish of Plaquemines in March, 2002, against his employer, Neptune Shipmanagement Services; the owner of the ship on which he was injured, Talmidge International; co-owners of the fleet to which the ship belongs, American Eagle Tankers and American Eagle Tankers Agencies; and the ship's insurer, Brittania Steam Ship Insurance Association. Pursuant to the Convention and the holding of the United States Fifth Circuit Court of Appeals in Francisco v. Stolt Achievement, 293 F.3d 270 (5th Cir.) cert. den. 537 U.S. 1030, 123 S.Ct. 561, 154 L.Ed.2d 445 (2002), the defendants removed the case to the United States District Court for the Eastern District of Louisiana on July 15, 2002. Once in federal court, the defendants moved to compel arbitration and to stay the proceedings or, in the alternative, to dismiss Mr. Dahiya's suit. Mr. Dahiya moved to remand, arguing that the contract's terms did not qualify as an arbitration agreement under the Convention and therefore could not support removal under 9 U.S.C.A. § 205[2] which provides in pertinent part that:
[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.
Although finding that the arbitration clause in Mr. Dahiya's contract was applicable and virtually identical to the one enforced by the Fifth Circuit in Francisco, Judge Martin L.C. Feldman of the Eastern District remanded the case to state court on October 21, 2002, on the ground that Louisiana Revised Statute 23:921 precluded enforcement of the arbitration clause. With respect to § 205, the court reasoned that because the deed contained no valid forum selection clause, the parties had not entered into an agreement to arbitrate valid under the Convention.
From that point, parallel proceedings, one in federal court and one in state court, went forward. Defendants filed a federal appeal of Judge Feldman's ruling. While that appeal was pending, Judge Feldman revisited the issue of the alleged preclusive affect of R.S. 23:921 in Lejano v. K.S. BANDAK, C.A. 00-2990, 2000 WL 33416866 (E.D.La.2000). In that decision, Judge Feldman recanted his prior remand order in this case with the following comment:
The plaintiffs' again argue that the Court's ruling in Vinod Kumar Dahiya v. Talmidge International, Ltd., et al, Civil Action No. 02-2135 (October 11, 2002), should apply to this case. The Court disagrees. Although the Court lacks jurisdiction to vacate its earlier ruling granting remand in Dahiya, after *1167 further review of the Supreme Court's ruling in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) and its reasoning in Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Court finds that its ruling in Dahiya was incorrect.
Because Judge Feldman no longer had jurisdiction at that point, however, he could not rectify his error and the federal appeal continued. Because of a general federal rule precluding appeals of remand orders, however, a split panel of the Fifth Circuit dismissed the appeal for lack of appellate jurisdiction, noting that federal statutory law "... bars a federal appellate court from reviewing the remand ruling `no matter how erroneous.'" Dahiya v. Talmidge International, Ltd., et al, 371 F.3d 207, 209 (5th Cir.2004), citing Arnold v. State Farm Fire & Cas. Co., 277 F.3d 772, 775 (5th Cir.2001); and 28 U.S.C.A. § 1447(d), (d) (West 1994).

DISCUSSION
In their first assignment of error, the Appellants assert that the district court erred as a matter of law when it failed to sustain the Appellants' Exceptions of No Right of Action, Improper Venue and Arbitration pursuant to an arbitration forum selection clause in Mr. Dahiya's contract of employment, or to dismiss or stay the case pending arbitration. We agree and find that federal law supercedes any state law that purports to nullify forum selection clauses in employment contracts and vitiate an international treaty obligation of the United States.

Standard of Review
We review the district court's failure to enforce the arbitration clause in Mr. Dahiya's employment contract de novo because it was based implicitly on the court's legal conclusion that Louisiana statutory law supercedes the Convention. The Louisiana Supreme Court stated in Cleco Evangeline, LLC v. Louisiana Tax Commission, 01-2162 (La.4/3/02), 813 So.2d 351, 353, with respect to an issue of law being reviewed on appeal that "[w]e review the matter de novo, and render judgment on the record, without deference to the legal conclusions of the tribunals below." The issue regarding whether federal law preempts state law is a question of law, so this issue must be reviewed de novo by this Court. In Re Medical Review Panel Proceedings for the Claim of Allan Tinoco, et al. v. Meadowcrest Hospital, et al., 03-0272 (La.App. 4 Cir. 9/17/03), 858 So.2d 99, 103, citing Crawford v. Blue Cross and Blue Shield of La., 00-2026, p. 3 (La.App. 4 Cir. 12/5/01), 814 So.2d 574, 577.

Analysis
The defendants contend that federal law, specifically the Convention, preempts state statutory law and thus, the arbitration clause in Mr. Dahiya's contract of employment is valid and should have been enforced. The Convention was negotiated in 1958 and entered into by the United States in 1970 pursuant to the Constitution's treaty power. That same year, Congress adopted enabling legislation, codified at 9 U.S.C. § 201 et seq., to make the Convention, "the highest law of the land." As such, the Convention must be enforced according to its terms over all prior inconsistent rules of law. F.A. Richard and Associates, Inc. v. General Marine Catering Co., Inc., 688 So.2d 199, 202 (La.App. 4 Cir. 1/29/97), citing Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co., 767 F.2d 1140 (5th Cir.1985). The Supremacy Clause declares that federal law "shall be the supreme law of the land[,] ... any Thing [sic] in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. *1168 2 (emphasis added). See, Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 904 (5th Cir.2005). The Fifth Circuit has found that "Where [state] laws conflict with a treaty, they must bow to the superior federal policy." Id. citing Zschernig v. Miller, 389 U.S. 429, 441, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968) (emphasis added).
Congress' implementing legislation for the Convention is found as part of the Arbitration Act. 9 U.S.C. § 1 et seq. Chapter 1 of Title 9 is the Federal Arbitration Act (hereinafter "FAA") passed long ago to overcome American courts' common law hostility to the arbitration of disputes. Id. The Convention incorporates the terms of the FAA, codified at 9 U.S.C. § 1 et seq., which in turn specifically requires that a court stay litigation of a dispute that is subject to arbitration.
However, Louisiana law is completely inapposite. Louisiana Revised Statute 23:921(A)(2) states:
The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.
Louisiana Revised Statute 23:921(A)(2).
The Louisiana anti-forum-selection-clause statute conflicts directly with the Convention's mandate to enforce arbitration clauses.
Furthermore, while the United States Constitution grants jurisdiction to federal district courts in all "Cases of admiralty and maritime jurisdiction," U.S. Const. art. III, § 2, see also 28 U.S.C. § 1333(1), state courts have concurrent jurisdiction by virtue of the "saving to suitors" clause of the Judiciary Act of 1789 as amended.
In the present case, Mr. Dahiya, although his case falls within federal admiralty jurisdiction, brought his case in state court pursuant to the savings to suitors clause, designating his suit as a suit in admiralty or a general maritime claim in his original Petition for Damages: "This case is an admiralty and/or maritime claim brought in state court under the saving to suitors clause and is brought pursuant to Article 1732(6) of the Louisiana Code of Civil Procedure."
"As a general proposition, `[a] maritime claim brought in common law state courts ... is governed by the same principles as govern actions brought in admiralty, i.e., by federal maritime law.'" Giorgio v. Alliance Operating Corp., et al, 05-0002, pg. 10 (La.1/19/06), 921 So.2d 58, 67, citing Green v. Industrial Helicopters, Inc., 593 So.2d 634, 637 (La.1992), cert. denied, 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992). "Thus, with admiralty jurisdiction comes the application of substantive admiralty law." Giorgio, at 921 So.2d 67, citing New England Mut. Marine Ins. Co. v. Dunham, 78 U.S. (11 Wall.) 1, 25, 20 L.Ed. 90 (1870).
However, the general maritime law is not a complete or all-inclusive system.
When new situations arise that are not directly governed by legislation or admiralty precedent, federal courts may fashion a rule for decision by a variety of methods. Federal courts may, and often *1169 do, look to state statutory law and to precepts of the common law which they "borrow" and apply as federal admiralty rule. Moreover, federal courts may apply state law, as such, to a case with the admiralty jurisdiction if the occurrence is "maritime but local" and there is no need to fashion a uniform admiralty rule. Finally, federal courts may apply state law and regulations to supplement the general maritime law when there is no conflict between the two systems of law, and the need for uniformity of decision does not bar state action. Giorgio 921 So.2d at 67-68, citing T. Schoenbaum, Admiralty and Maritime Law § 4-1, pp. 158-59.
"It is well settled that by virtue of the savings clause `a state, "having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents as it sees fit" so long as it does not attempt to make changes in the substantive maritime law.'" Giorgio, 921 So.2d at 67-68, citing Green, 593 So.2d at 637. The Court in Giorgio noted that:
The United States Supreme Court has made clear that the uniformity principle does not preclude the application of state law in admiralty; rather, the decision whether to apply state law in cases within admiralty jurisdiction must be based upon balancing state and federal interests:
[T]he fact that maritime law is  in a special sense at least ...  federal law and therefore supreme by virtue of Article VI of the Constitution carries with it the implication that wherever a maritime interest is involved, no matter how slight or marginal, it must displace a local interest, no matter how pressing or significant. But the process is surely rather one of accommodation, entirely familiar in many areas of overlapping state and federal concern, or a process somewhat analogous to the normal conflict of laws situation where two sovereignties assert divergent interests in a transaction as to which both have some concern.
Giorgio, at pg. 11, 921 So.2d 58, citing Kossick v. United Fruit Co., 365 U.S. 731, 739, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961).
"Therefore, state law may be applied where the state's interest in a matter is greater than the federal interest." Giorgio, 921 So.2d at 68, citing Green, 593 So.2d at 638. However, we find that in the instant case, the interest in federal policy outweighs that of state policy; therefore, federal law preempts state law.
Repeatedly, Congress has endorsed arbitration clauses, first through the passage of the Federal Arbitration Act (hereinafter "FAA"), and then through adoption of the Convention and implementation of the Convention Act. Lim, 404 F.3d at 905. "In 1984, the United States Supreme Court held the Federal Arbitration Act preempts state law and concluded that state courts cannot apply state statutes that invalidate arbitration agreements." F.A. Richard and Associates, Inc. v. General Maritime Catering Co., Inc., 96-1902 (La.App. 4 Cir. 1/29/97), 688 So.2d 199, 202, citing Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). "The Court reaffirmed its decision regarding the Federal Arbitration Act's preemption of state law in Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) and Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Thus, the Convention, which encompasses Chapter 2 of Title 9, The FAA, preempts any state law that would invalidate arbitration agreements." F.A. Richard and Associates, Inc. v. General Marine Catering Co., Inc., 688 So.2d *1170 at 202. The district court's finding otherwise is erroneous.
Moreover, federal courts have supported this strong policy in favor of arbitration. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Lim, 404 F.3d at 906, quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In the context of the Convention, the Supreme Court held: "[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' [arbitration] agreement, even assuming that a contrary result would be forthcoming in a domestic context." Lim, 404 F.3d at 906, quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (emphasis added). "More specifically, federal courts have endorsed federal arbitration policy by applying the Convention to seaman's employment contracts." Lim, citing Francisco, 293 F.3d at 274; Bautista v. Star Cruises, 396 F.3d 1289, 1300 (11th Cir.2005).
We note that in weighing these competing policy concerns, plaintiff's employment contract does not present the inequities the Louisiana statute was crafted to prevent. See Lim. "That statute seeks to protect Louisiana citizen-employees from being subjected to litigation in a foreign forum, under laws with which they are not familiar and before a foreign body." Lim, citing Testimony of Representative Jackson, Official Minutes of Louisiana Senate Committee on Labor and Industrial Relations, Hearing on Senate Bill 915 (22 April 1999). Plaintiff in this case is a resident and citizen of India. His employment contract does not require him to bring claims in a foreign forum, but instead require him to submit to arbitration in his home country, before Mr. Dahiya's countrymen.
Nevertheless, the United States Supreme Court in M/S Bremen v. Zapata Off-Shore Company, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), held that a contractual choice-of-forum clause should be held unenforceable if its enforcement would contravene a strong public policy of the forum in which suit was brought, whether declared by statute or by judicial decision. Id., 407 U.S. at 15-16, 92 S.Ct. at 1916.
While we acknowledge that the Louisiana Supreme Court did find in Sawicki v. K/S Stavanger Prince, 802 So.2d 598, 603 (La.2001) that La. R.S. 23:921 A(2) is an expression of strong Louisiana public policy concerning forum selection clauses, we note that the Court very recently stated in Giorgio that "federal courts may apply state law and regulations to supplement the general maritime law when there is no conflict between the two systems of law, and the need for uniformity of decision does not bar state action." Giorgio, 921 So.2d at 67, quoting Schoenbaum, supra, at § 4-1, pp. 158-59. The Court further noted that "it is well settled that by virtue of the savings clause `a state, having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents as it sees fit' so long as it does not attempt to make changes in the substantive maritime law." Giorgio 921 So.2d at 67-68, citing Green v. Industrial Helicopters, Inc., 593 So.2d 634, 637 (La.1992), cert. denied, 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992).
Thus, there would appear to be two competing policy interests here. By enacting § 23:921, the Louisiana legislature has expressed its concern that in order for forum selection and choice of law clauses *1171 in employment contracts to be valid, employees must ratify them subsequent to the incidents giving rise to the claims. La. R.S. § 23:921A(2) (West 2004). The Louisiana Supreme Court, in Sawicki, 802 So.2d at 603, stated that the statutory requirement that employees agree to the forum (arbitration versus court, or choice of court) and the law to be applied after the fact of their inquiry or dispute occurs reflects Louisiana's strong public policy concerning forum selection clauses.
However, the federal policy indicated by the Supreme Court in Bremen pulls in the opposite direction entirely. In Bremen, the ship at issue "was to traverse the waters of many jurisdictions . . . [That] the accident occurred in the Gulf of Mexico and the barge was towed to Tampa in an emergency were mere fortuities." 407 U.S. at 13, 92 S.Ct. at 1915. The Court explained that the international contracting parties wanted to provide a neutral forum beforehand, so that there would be no question as to what would happen in case of a dispute. Id. This strong federal policy regarding the validity of pre-dispute selections of forum arises from "sensitivity to the need of the international commercial system for predictability in the resolution of disputes." Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co. (Pemex), 767 F.2d 1140, 1148-49 (5th Cir.1985). This Court also recognizes the strong federal policy in favor of rigorously enforcing the specific forum choice of arbitration and arbitration awards, as reflected by Congress in enacting the FAA and the Convention. See Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984); Scherk v. Alberto-Culver Co., 417 U.S. 506, 519-20, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974).
Predictability in the resolution of disputes is what the Appellants desired and what Mr. Dahiya expressly agreed to in his deed here, and precisely what § 23:921 conflicts with. If an accident or incident were to occur during and relating to Mr. Dahiya's training and employment under Neptune, notwithstanding in which body of water, Section II.8 of Mr. Dahiya's deed clearly anticipated the procedure to be followedarbitration in either India or Singapore before a specific arbitrator who would apply Indian arbitration law. That this incident occurred in international waters near Louisiana and that Mr. Dahiya received emergency medical treatment in Louisiana are "mere fortuities" because Mr. Dahiya and Neptune had already agreed to submit to arbitration elsewhere.
Section 23:921 voids all arbitration clauses in employment contracts, regardless of their terms. We find that this policy not only directly conflicts with Bremen's presumption of validity for forum selection clauses in general, but it also conflicts with the proarbitration policy set out by Congress in the FAA and the Convention that similarly presumes arbitration provisions to be "valid, irrevocable, and enforceable." 9 U.S.C.A. § 2. The presumption of validity of arbitration clauses is also what another public policy of Louisiana heavily favors, as evidenced by our legislature's enactment of La. R.S. § 9:4201, which closely mirrors § 2 of the FAA. See Id; La. R.S. § 9:4201. Thus, Louisiana's general policy on arbitration is consistent with federal policy that arbitration clauses should be considered presumptively valid.
Given the weight of these competing policy concerns, we find that Mr. Dahiya has not met his heavy burden of showing that the forum selection clause in his deed is unreasonable, and we thus find that the district court erred in concluding that Mr. Dahiya had made such a showing.
Additionally, we find that any argument that the arbitration clause in Mr. Dahiya's *1172 deed is foreclosed by La. R.S. § 23:921 must be tried and tested by preemption analysis. Federal statutes enacted pursuant to the United States Constitution are the supreme law of the land, "[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 108, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (citations omitted). Section 2 of the FAA, enacted by Congress pursuant to the Commerce Clause and incorporated by the Convention in 9 U.S.C. § 208, "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Memorial Hosp v. Mercury Const. Corp, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
Finally, the Convention contemplates a limited inquiry by courts when considering whether to compel arbitration. The inquiry questions (1) is there an agreement in writing to arbitrate the dispute; in other words, is the arbitration agreement broad or narrow; (2) does the agreement provide for arbitration in the territory of a Convention signatory; (3) does the agreement to arbitrate arise out of a commercial legal relationship; and (4) is a party to the agreement not an American citizen. If these requirements are met, the Convention requires the courts to order arbitration. Sedco, Inc., 767 F.2d at 1144-45; Ledee v. Ceramiche Ragno, 684 F.2d 184, 185-186 (1 Cir.1982).
We find that Mr. Dahiya's arbitration clause easily meets all four requirements of the Convention and that the district court erred in not staying the proceedings and compelling arbitration per the Appellants' motions. In the instant case, Mr. Dahiya signed a deed covering his twelve months of practical training at-sea, which would be applied to his three-year Diploma in Maritime Studies. He also agreed in the deed to serve as an employee of Neptune or a company of Neptune's choosing for a bonded period of two years after receiving his degree and passing his Class V exam. Section I.17 outlined how much Neptune would pay Mr. Dahiya as "wages" for the two years remaining before receiving his degreethe first consisting of his at-sea training and the second year consisting of his attendance of classes at the National Maritime Academy in Singapore. We find that because both parties exchanged promises in the deed, it served as an employment contract.
Both Singapore and India are signatories to the Convention.[3] Thus, the second requirement for the Convention to apply is met in the case sub judice. The third requirement for the Convention to apply is that the agreement arises out of a commercial legal relationship. Francisco, 293 F.3d at 273. The U.S. Fifth Circuit Court of Appeals held in Francisco, that seaman employment contracts are commercial legal relationships covered by the Convention, even though they are excepted by the FAA. Id. at 274-75. Accordingly, we find that the third requirement is also met.
Lastly, the final requirement for the Convention to apply is that there must be a party to the agreement who is not an American citizen. Id. at 273. It is clear that neither Mr. Dahiya, nor Neptune is an American citizen. Thus, we find that the final requirement is also met in this case.
Mr. Dahiya's contract of employment with Neptune contains an arbitration forum *1173 selection clause requiring all disputes to be resolved in arbitration in either Singapore or India, pursuant to Indian law. The arbitration clause brings the case within the scope of The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, an international treaty of the United States and, as such, the supreme law of the land. Federal law controls and makes clear that the Convention preempts state law, in this case a Louisiana statute that nullifies forum selection clauses in contracts of employment. We find that pursuant to The Convention and the Federal Arbitration Act, the defendants' Exceptions of No Right of Action, Improper Venue and Arbitration should have been sustained and the case stayed pending arbitration. Accordingly, we find that the Appellants' first assignment of error has merit and we therefore reverse the district court's ruling.
In their second assignment of error, the Appellants argue that the district court's award of general damages was improperly based on economic standards and legal precedent of the United States as opposed to that of India, Mr. Dahiya's native country.
In their third assignment of error, the Appellants contend that the district court's award for past lost wages and future medical expenses was not supported by the evidence. Because we find that the district court improperly applied Louisiana statutory law, rather than federal law, we pretermit any discussion of the appellants' second and third assignments of error that address general and special damages, as well as the cross-appeal of Mr. Dahiya, as they are now moot. Mr. Dahiya files a cross-appeal arguing that the district court inadvertently omitted the defendants' insurer, Britannia, and that the general damage award is inadequate. As stated previously, we pretermit any discussion of these issues for the reasons discussed supra.
Furthermore, we find Mr. Dahiya's argument that the law of the case doctrine bars any review of whether federal law preempts state law in this matter[4], to be inapplicable because the Louisiana Supreme Court has very recently ruled on this issue in Giorgio v. Alliance Operating Corp., et al. Thus, we must follow the law as set forth in Giorgio.

DECREE
For the foregoing reasons, we reverse the district court's judgment. The matter is remanded to the district court for further proceedings consistent with the reasons cited herein.
REVERSED AND REMANDED.
NOTES
[1] Judgment was rendered in favor of Mr. Dahiya in the total amount of $579,988.00. Mr. Dahiya has filed a cross-appeal alleging that this amount is inadequate. Mr. Dahiya's cross-appeal also alleges that the district court inadvertently omitted to include the defendants' insurer, The Britannia Steam Ship Insur. Assoc., Ltd., as a party cast in judgment.
[2] Because the defendants failed to remove within thirty days, federal jurisdiction hinged entirely on § 205.
[3] In 1960, India acceded to the Convention; in 1986, Singapore acceded to the Convention.
[4] The defendants previously filed an application for supervisory writs regarding the enforceability of the arbitration clause. This Court denied the application finding that La. R.S. 23:921 invalidates the arbitration clause. This application was denied prior to the Louisiana Supreme Court's ruling in Giorgio.