WHIPPLE, J,
dissenting.
hi respectfully dissent from the majority’s opinion vacating the June 21, 2011 partial summary judgment and granting IOS’s writ application in 2011 CW 1318 and dismissing the writ application in 2011 CW 1240, each of which I address individually below.
2011 CW 1240
In this writ application, IOS challenges the trial court’s denial of its exceptions of no cause of action and prematurity, filed in response to Williams’s Second Supplemental and Amended Petition, wherein Williams challenged his obligations under the non-compete provision of the Operating Agreement. In support of these exceptions, IOS avers that, pursuant to the arbitration clause in the Operating Agreement, any dispute as to the terms of the Operating Agreement, including interpretation of the non-compete provision therein, must be decided in the arbitration forum.
At the hearing on IOS’s exceptions of no cause of action and prematurity, the trial court denied the exceptions in open court, concluding that Williams’s petition stated a cause of action and was not premature. Specifically, the trial court found that Williams had a cause of action and that “[wjhether or not that is concurrent with the arbitration agreement or not” was “not the issue for the [trial court].”
In the present matter, the parties do not dispute that there is a written arbitration provision in the Operating Agreement. Rather, the issue is |2whether this specific “non-compete issue” is referable to arbitration. IOS avers this issue is referable to arbitration, relying on the presumption of arbitrability and the language of the arbitration provision. IOS contends the arbitration provision in the Operating Agreement broadly covers “any controversy or claim.” Thus, IOS argues, because Williams’s supplemental petition for declaratory judgment seeks a declaration that the non-compete clause in the Operating Agreement would not restrict certain activities, this claim is subject to arbitration.
In opposition, Williams avers that public policy and judicial efficiency provide an exception under these particular facts, and that the non-compete issue should remain pending in the district court, ancillary to his original petition. As support, Williams *220 notes that Louisiana has a strong public policy of restricting non-competition agreements, citing SWAT 24 Shreveport Bossier, Inc. v. Bond, 2000-1695 (La.6/29/01), 808 So.2d 294. Louisiana’s policy against non-competition agreements and the exceptions thereto are set forth in LSA-R.S. 28:921. Specifically, LSA-R.S. 23:921(A) provides:
(1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.
(2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee’s contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the | ^occurrence of the incident which is the subject of the civil or administrative action. [Emphasis added.]
In sum, LSA-R.S. 23:921(A)(2) clearly provides that every choice of forum and choice of law clause in agreements between employees and employers is null, unless agreed to by the employee after the incident. As such, Williams avers that: (1) it is undisputed that IOS was his employer; (2) IOS is now attempting to remove the “non-compete issue” as related to the Operating Agreement to a new forum, the arbitration forum; and (3) to allow such would violate the public policies set forth in La. R.S. 23:921(A)(2).
In evaluating these “public policy” arguments, I note that the parties do not cite (nor have I found) a case where an arbitration clause was set aside specifically for being in violation of Louisiana’s public policy against non-compete agreements. However, the clear language of LSA-R.S. 9:4201 provides an exception to arbitration clauses for “such grounds as exist at law or in equity for the revocation of any contract.” Furthermore, as stated by the United State Supreme Court in M/S Bremen v. Zapata Off-Shore Company, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972), “A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.”[1]
*221 [4Counsel for IOS further argues that any “public policy” in LSA-R.S. 28:921 should not trump the Federal Arbitration Act. In support, IOS cites Dahiya v. Talmidge International Ltd., 05-0514 (La.App. 4 Cir. 5/26/06), 931 So.2d 1168. In Dahiya, a foreign maritime worker brought suit in a Louisiana district court for injuries. His maritime employer sought to stay the proceeding pending arbitration of the claim, as required by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Similar to the present matter, the plaintiff argued that Louisiana’s anti-forum-selection-clause provision as set forth in LSA-R.S. 23:921(A)(2) and the public policies therein conflict with and prohibit the Convention’s mandate to enforce the arbitration clauses. The Fourth Circuit ultimately rejected the argument and ordered arbitration, but only after weighing the two competing policies at play, i.e., Louisiana’s policy against forum selection clauses in employment agreements and the Convention’s policy of rigorous enforcement of arbitration agreements in order to have predictability in the resolution of disputes in the international commercial system. The Fourth Circuit found the federal policy outweighed the Louisiana public policy, noting the Louisiana policy seeks to protect Louisiana citizen-employees and the plaintiff in the case at hand was a resident and citizen of India. Notably, Dahiya did not establish a steadfast rule that federal law always supercedes state law that purports to nullify a forum selection clause; rather, Dahiya recognized that the competing purposes of the state and federal law must be weighed against each other.
On this basis, Williams counters that the operative language of the non-compete agreements in the Employment Agreement and Operating | (¡Agreement are identical and are both governed by Louisiana law.[2] Therefore, he contends that maintaining the claim in the district court as it pertains to both the Employment Agreement and the Operating Agreement serves the interest of justice by avoiding or reducing the possibility of inconsistent judgments on the same material facts and application of law. ie., the district court finding that Williams’s proposed new business ventures did not violate the language of the non-compete agreement in the Employment Agreement, but the arbitration panel finding that the new business ventures did violate the same non-compete agreement as set forth in the Operating Agreement. I agree.
In particular, I note that LSA-R.S. 9:4201 specifically provides an exception to the application of arbitration clauses for “such grounds as exist at law or in equity,” which include judicial efficiency and the prevention of inconsistent decisions. Moreover, given the status of the parties, the nature of their relationship, and the timing and purpose underlying the confection of the subsequent Operating Agreement, I find no error in the trial court’s ruling denying these exceptions by the defendant.
Although it is well established that arbitration is favored under state and federal law, IOS’s arguments in this writ application raise several concerns. Plaintiffs petition for declaratory relief involves interpretation of a non-competition clause. Virtually the same non-competition clause is found in the Employment Agreement *222 and the Operating Agreement between the parties. It is undisputed that the Employment Agreement does not contain an arbitration clause and that all claims related to the non-compete agreement as stated in the Employment Agreement are contractually and Illegally reserved to the district court. As such, I agree with Williams that inconsistent decisions could result if the district court interpreted the clause in the Employment Agreement, while the arbitration panel interpreted the same language but as found in the Operating Agreement.
However, the more compelling argument is that since the claim involves a non-compete clause between an employee and employer, allowing the defendants to transfer the claim to the arbitration panel and forcing plaintiff to be bound thereby would violate LSA-R.S. 23:921(A)(2) and the public policies therein. Although this precept is qualified by In Re Gulf Fleet Holdings, wherein the court held that the public policy considerations of LSA-R.S. 23:921— unequal bargaining power and loss of livelihood — do not come into play where the employee is the former owner of the company and the employment agreement was part of a multi-million dollar purchase of the company, these considerations are seemingly inapplicable under the particular facts presented herein. Specifically, in this case, the dispute involves two contractual agreements, the employee/owner has specifically agreed and acknowledged in both contracts that there is a reservation of some rights to compete, and the district court is exercising lawful jurisdiction to consider, in a properly filed declaratory judgment action by the employee, the very same provision which would be at issue in the subsequently confected Operating Agreement.[3]
Accordingly, I conclude the trial court did not err in denying IOS’s exceptions of no cause of action and prematurity, and hereby deny this application for supervisory writs. Thus, I find no error in the trial court’s exercise of jurisdiction and to render declaratory judgment addressing the | parties’ respective claims and defenses related to the non-compete provisions in both the Operating Agreement and Employment Agreement.
2011 CW 1318
In this writ application, IOS challenges the trial court’s denial of IOS’s exception of lack of subject matter jurisdiction regarding Williams’s claim for declaratory judgment as to his obligations under the Employment Agreement. Specifically, IOS contends that by virtue of that the corporate resolution which it passed, through which IOS released Williams from any and all claims arising from the non-compete agreement in the Employment Agreement, Williams’s demand for declaratory judgment decreeing his obligations under the Employment Agreement was rendered moot, thereby further depriving the trial court of subject matter jurisdic *223 tion. Specifically, IOS contends that based on its actions, there no longer remains any justiciable claim or controversy as to the non-compete agreement in the Employment Agreement.[4] Accordingly, in this writ application, IOS seeks reversal of the trial court’s July 12, 2011 judgment denying its exception and requests dismissal of the judicial proceedings (and any resulting rulings) in the trial court to the extent they relate to the Employment Agreement.
The corporate resolution passed by IOS provides, in pertinent part, as follows:
BE IT HEREBY RESOLVED, that International Offshore Services, L.L.C. (“IOS”) does hereby irrevocably and unconditionally release, Steven J. Williams (“Williams”) from any and all Claims (as defined below) whether known or unknown, asserted or unasserted, which are in any way on account of, relating to, or arising from Section 4 (“Limitation on Activities”) of the International Offshore Services L.L.C. Employment Agreement, signed by Williams on January 8, Ia2008, a copy of which is attached to this Resolution, and agrees that it will not enforce or seek to enforce any Claims against Williams for any breach of the “Limitation on Activities” provisions of said Employment Agreement.
BE IT FURTHER RESOLVED, that the above irrevocable release does not, nor does it in any way indicate any intent to, waive or release any Claims against Williams which are in any way on account of, relating to, arising out of, or arising from the Third Amended and Restated Operating Agreement of International Offshore Services, L.L.C., dated July 7, 2009 (“Third Amended and Restated Operating Agreement”), or any earlier version of the operating agreements of IOS, including without limitation the Non-Competition provisions contained in Section 13 of the Third Amended Operating Agreement or any similar provisions contained in any earlier versions of the operating agreements of IOS, by operation of law, or otherwise, and IOS does hereby expressly reserve all of its rights under said Third Amended and Restated Operating Agreement [and earlier versions] and all claims it may have against Williams under said Third Amended Operating Agreement and Williams agrees to and consents to this reservation of rights under the Third Amended Operating Agreement.
BE IT FURTHER RESOLVED, that for purposes of this Resolution, Release and Agreement, the term “Claims” comprehensively includes, but is not limited to, actions, lawsuits, proceedings, claims, causes of action, demands, grievances, liabilities, suits, and judgments, whether actual or potential, whether presently known or unknown, recognized by the law of any jurisdiction, whether arising in tort, in contract, at law, in equity, at common law, or under any federal, state, county or local statute or law, under any and all theories of recovery of whatsoever nature, under any theory of liability, whatsoever. [Emphasis added.]
In denying the exception of lack of subject matter jurisdiction, the trial court stated as follows:
The resolution by IOS seeks to walk away from the controversy. But it’s this *224 Court’s position, and I do not feel, that defeats subject matter jurisdiction. Because it is still Mr. William’s right to determine the extent and scope of any limitations that the agreement may have put on him, whether or not IOS chose to participate in the battle, and certainly, they did until the very end.
If a case is moot, there is no subject matter on which the judgment of the court can operate. Council of City of New Orleans v. Sewerage and Water Board of New Orleans. 2006-1989 (La.4/11/07), 953 So.2d 798, 801. It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to controversies. In the Matter of E.W., 2009-1589 (La.App. 1st Cir.5/7/10), 38 So.3d 1033, 1036. Cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely. A “justiciable controversy” is one presenting an existing actual and substantial dispute involving the legal relations of parties who have real adverse interests and upon whom the judgment of the court may effectively operate through a decree of conclusive character. Women’s Health Clinic v. State, 2002-0016 (La.App. 1st Cir.5/10/02), 825 So.2d 1208, 1210, writ denied, 2002-2002 (La.11/1/02), 828 So.2d 586.
Moreover, even though the requirements of justiciability are satisfied when the suit is initially filed, when the fulfillment of these requirements lapses at some point during the course of the litigation before the moment of final disposition, mootness occurs. In such a case, there may no longer be an actual controversy for the court to address, and any judicial pronouncement on the matter would be an impermissible advisory opinion. Thus, jurisdiction, although once established, may abate if the case becomes moot. In the Matter of E.W., 38 So.3d at 1037.
However, exceptions to the mootness doctrine have been recognized. Under the voluntary cessation exception, if a defendant voluntarily stops wrongful conduct, then that change alone does not make a case moot unless the defendant shows with assurance that there is no reasonable expectation that the alleged violation will recur. Cat’s Meow, Inc. v. City of New Orleans through Department of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1194. Where the defendant has voluntarily ceased the complained-of conduct, a court should consider: (1) whether there is any reasonable | ^expectation that the alleged violation will recur; and/or (2) whether there are unresolved collateral consequences (such as an outstanding claim for compensatory or monetary relief). In the Matter of E.W., 38 So.3d at 1037.
The corporate resolution in the instant case does prevent IOS from asserting “any and all claims” against Williams under the non-compete provision in the Employment Agreement. Thus, IOS would not be able to sue Williams under the non-compete provision of the Employment Agreement for any of the business ventures in which he is now involved. However, contrary to the assertions by IOS, the corporation resolution only releases Williams from any claims by IOS under the non-compete in the Employment Agreement; it does not release him from his obligations under the non-compete provision.
Also, with regard to unresolved collateral consequences, as noted by Williams, the resolution of the extent of his obligations under the non-compete clause is relevant with regard to Williams’s fiduciary obligations to IOS assumed pursuant to the Employment Agreement, for which IOS could presumably sue, alleging a violation of Williams’s fiduciary duties based on his current business activities. Accordingly, *225 because Williams is still bound by the obligations of the non-compete agreement, I conclude that a justiciable controversy remains and he is entitled to have the extent of those obligations judicially determined through his declaratory judgment action.
For these reasons, I would deny IOS’s application for supervisory writs of review at IOS’s costs, challenging the trial court’s July 12, 2011 judgment denying IOS’s exception of lack of subject matter jurisdiction.
THE INSTANT APPEAL
Turning to the instant appeal, wherein IOS challenges the trial court’s June 21, 2011 judgment granting Williams’s motion for summary judgment, Inin the judgment, the trial court declared that Williams is not prevented by either the Employment Agreement or the Operating Agreement from engaging in certain listed business enterprises, which the trial court determined were not prohibited by the provisions of the two agreements.[5]
*226 |12On appeal, IOS again asserts that the trial court erred in: (1) ignoring a binding arbitration clause as to the non-compete provisions in the Operating Agreement; and (2) granting the summary judgment as to the renounced non-compete provisions in the Employment Agreement (where no justiciable controversy remained because of IOS’s waiver of all legal claims related to the non-compete provisions of that agreement).[6] Essentially, IOS again avers that the trial court had no jurisdiction to decide claims arising under the Operating Agreement, contending the arbitration clause therein required those matters to be submitted to an arbitration panel, and further that the trial court lacked subject matter jurisdiction to decide claims relating to the non-compete provision in the Employment Agreement, where IOS, by corporate resolution, agreed not to enforce that provision in the Employment Agreement. Notably, there is no assignment of error challenging the merits of the trial court’s declarations in the June 21, 2011 partial summary judgment.
With regard to the portion of the June 21, 2001 partial summary judgment declaring that Williams is not prevented or prohibited by the provisions of the Operating Agreement from engaging in certain business activities, for the reasons set forth above in our disposition of writ application number 2011 CW 1240, I would affirm the judgment on appeal.
| lsWith regard to IOS’s second assignment of error, wherein it contends that the trial court erred in granting summary judgment as to the terms of the non-compete provision of the Employment Agreement because the corporate resolution it passed rendered this claim moot, for the reasons expressed in my analysis of writ number 2011 CW 1318 above, I likewise find no merit to this argument. Because the corporate resolution only releases Williams from any claims by IOS under the non-compete in the Employment Agreement but does not release him from his obligations therein, Williams was still bound by the obligations of the non-compete agreement (in addition to any fiduciary duties assumed through the Employment Agreement). Accordingly, a justiciable controversy remained, and Williams was entitled to have the extent of those obligations judicially determined through his declaratory judgment action.
Moreover, because IOS has not challenged the substance or merits of the trial court’s determination as to Williams’s obligations pursuant to the non-compete clause in the Employment Agreement, I note that issue is not before us.
*227 I note, however, that the June 21, 2011 judgment provides in part that Williams is not prevented or prohibited by the Employment Agreement from engaging in “any other business that IOS was not engaged on January 8, 2009 ..., as defined by the four categories specifically listed in the noncompete clause.” (Emphasis added). Louisiana courts require that a judgment be precise, definite, and certain. Vanderbrook v. Coachmen Industries, Inc., 2001-0809 (La.App. 1st Cir.5/10/02), 818 So.2d 906, 913. Because these “four categories” are not specified within the judgment, this portion of the judgment lacks specificity and is not precise, definite and certain as required by the jurisprudence. However, the judgment clearly | ^recognizes that Williams’s business activities are limited only by those activities in which IOS was engaged at the time the parties entered into the Employment Agreement, and, as stated above, IOS has not challenged the substance of this ruling. Accordingly, I would amend the judgment to expressly state the four categories of business activities in which IOS was engaged at the time of confection of the Employment Agreement, as set forth in the non-compete provision therein. See LSA-C.C.P. art. 2164 and Brister v. Brister, 2010 CU 2278, p. 3 (La.App. 1st Cir.5/6/11) (unpublished).
For these reasons, I respectfully dissent.

. Zapata involved a contract for a tug owner to tow a barge from Louisiana to Italy. The contract contained a choice-of-forum clause for the London Court of Justice. Ultimately, the Supreme Court remanded the matter, stating:
Although their opinions are not altogether explicit, it seems reasonably clear that the District Court and the Court of Appeals placed the burden on Underwater to show that London would be a more convenient forana than Tampa, although the contract expressly resolved that issue. The correct approach would have been to enforce the forum clause specifically unless Zapata could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching. Accordingly, the case must be remanded for reconsideration.
[Emphasis added.]
Zapata Off-Shore Company, 92 S.Ct. at 1916.

. Section 17.2 of the Operating Agreement states—
Application of Louisiana Law. This Operating Agreement, and the application or interpretation hereof, shall be governed exclusively by its terms and the law of the State of Louisiana (without giving effect to principles of conflicts of laws).

. I note that my colleagues conclude that the trial court had no jurisdiction herein because, although nothing in this regard appears of record, at oral argument (and by a letter from defendants thereafter), the parties’ counsel disclosed that some arbitration has occurred herein. However, I note that nothing has been presented to this court to establish that a final award has been confirmed. Moreover, in my opinion, the fact of (or propriety of) an arbitration panel’s exercise of jurisdiction is neither dispositive or persuasive in our resolution of the issues presented for review, where, as noted above, the dispute involves two separate contractual agreements, the employee/owner and the purchaser have specifically agreed and acknowledged in both contracts, that there is a reservation of some rights to compete, and the district court is exercising lawful jurisdiction to consider, in a properly filed declaratory judgment action by the employee, the very same provision which would be at issue in a subsequently confected Operating Agreement.

. In its writ application, IOS also contends that the trial court erred in granting Williams's motion for summary judgment on his declaratory action claim involving the Employment Agreement before resolving IOS’s exception of lack of subject matter jurisdiction. However, I also reject this argument as meritless, finding no reversible error on this basis.

. With regard to IOS’s appeal of the trial court's June 21, 2011 judgment granting Williams's motion for summary judgment, after the record was lodged, this court issued a Rule to Show Cause Order on September 19, 2011, which stated, in pertinent part:
The June 21, 2011 judgment on appeal in this matter appears to be a partial summary judgment without the proper designation of finality required by LSA-C.C.Pr. art. 1915.... Therefore, the parties are hereby ordered to show cause by briefs on or before October 19, 2011, why this appeal should not be dismissed by showing that La. C.C.P. art. 1915(B) is not applicable or that there has been a designation of the judgments as final by the trial court under La. C.C.P. Art. 1915(B).
In response to this order, the record in this matter was supplemented with a September 22, 2011 Order, signed by the trial court, which states:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Judgment signed on June 21, 2011, granting summary judgment in favor of [Mr. Williams], and against [IOS] constitutes a full and final judgment as it grants the relief sought by plaintiff against the defendant and as such is immediately appealable.
The June 21, 2011 judgment, which granted Williams’s motion for summary judgment granted him the relief that he prayed for in his motion for summary judgment in that it granted him declaratory relief. The judgment, however, did not grant Williams all of the relief that he prayed for in his original and supplemental petitions in that it did not grant his prayer for all costs and reasonable attorney’s fees, and as such, the judgment is not final under LSA-C.C.P. art. 1915(A). Accordingly, the June 21, 2011 judgment is "a partial summary judgment without the proper designation of finality” required by LSA-C.C.P. art. 1915(B), as set forth in this Court’s September 19, 2011 Rule to Show Cause Order. See Joseph v. Ratcliff, 2010-1342 (La.App. 1st Cir.3/25/11), 63 So.2d 220, 224.
However, in considering the trial court's September 22, 2011 order in response to this court's show cause order decrees that the June 21, 2011 judgment "constitutes a full and final judgment as it grants the relief sought by plaintiff against the defendant and as such is immediately appealable,” while it does not reference LSA-C.C.P. art. 1915 or 1915(B), I would nonetheless consider the language of the order as constituting the appropriate and proper certification of finality required by Article 1915(B), since it refers to the June 21, 2011 judgment as being a "full and final judgment” and "immediately ap-pealable.”
Moreover, based on a de novo review of the propriety of this certification, see R.J. Messinger, Inc. v. Rosenblum, 2004-1664 (La.3/2/05), 894 So.2d 1113, 1122, I find there is no just reason for delaying review of this partial summary judgment in that the issues raised in this appeal are closely aligned with the issues addressed by this court in the related writ applications that were referred to this panel. Accordingly, a review of the June 21, 2011 partial summary judgment at this time would facilitate final resolution of these issues in this case, thereby fostering judicial economy. Moreover, regarding the relationship between the adjudicated and unadjudicated claims, see Messinger, 894 So.2d at 1122, the remaining issues of costs and attorney’s fees before the trial court are distinct from the issues presented in the present appeal such *226 that a final determination may be made as to the issues presently before this court.
Accordingly, I would recall the Rule to Show Cause Order and maintain IOS's appeal of the June 21, 2011 partial summary judgment.

. Although not listed as an assignment of error, IOS argues in its appellate brief that the trial court should have determined whether it had subject matter jurisdiction before it considered Williams's motion for summary judgment. A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is null. LSA-C.C.P. art. 3; Gisclair v. Louisiana Tax Commission, 2009-0007 (La.6/26/09), 16 So.3d 1132, 1133 n. 1. However, while the better practice may have been for the trial court to decide the issue of its continuing subject matter jurisdiction prior to ruling on Williams’s motion for summary judgment, in disposition herein of IOS’s writ application in 2011 CW 1318, I find that IOS’s corporate resolution did not deprive the trial court of subject matter jurisdiction over the claims related to the non-compete agreement in the Employment Agreement and, thus, in my view, that the exception of lack of subject matter jurisdiction was properly denied.