United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 24, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 03-30380

JOSELITO MADRIAGA LIM, on behalf of himself and all other current and former employees of Offshore Specialty Fabricators, Inc., similarly situated; ADELITO M. AGANON; RICHARD AGCAOILI; LUIS AGNABO; ANTONIO P. ALCANTARA; ET AL.,

Plaintiffs-Appellees,

and

MARIO M. CABANLIT, on behalf of himself and all other current and former employees of Offshore Specialty Fabricators, Inc., similarly situated; JIMMY GADLAW LIM, on behalf of himself and all other current and former employees of Offshore Specialty Fabricators, Inc., similarly situated,

Plaintiffs-Intervenor Plaintiffs-Appellees,

versus

OFFSHORE SPECIALTY FABRICATORS, INC.,

Defendant-Intervenor Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

In this 28 U.S.C. § 1292(b) interlocutory appeal, Offshore Specialty Fabricators, Inc. (OSFI), challenges the denial of its motions to dismiss for lack of subject matter jurisdiction and for improper venue. *See* FED. R. CIV. P. 12(b)(1), (b)(3). Plaintiff

seamen are residents and citizens of the Philippines. Their international employment contracts at issue, controlled by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 10 June 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, *reprinted in* 9 U.S.C.A. § 201 note (hereinafter, Convention), require arbitration of plaintiffs' Fair Labor Standards Act claims, notwithstanding exceptions claimed by plaintiffs. (One claimed exception is pursuant to a Louisiana statute which expresses that State's strong public policy against forum selection clauses in employment contracts.) **VACATED and REMANDED.**

I.

OSFI, a Louisiana corporation, employed Joselito Madriaga Lim, a Philippine resident and citizen, to work aboard the OSFI DB-1, a foreign-flagged vessel whose home port is Port Vila, Vanuatu. The Philippine government requires foreign employers or their agents to employ Filipino workers through the Philippine Overseas Employment Administration (POEA), a department of the Ministry of Labor and Employment. The POEA-mandated employment contracts for seamen incorporate the Philippine government's Standard Terms and Conditions Governing the Employment of Filipino Seafarers On Board Ocean-Going Vessels (Standard Terms).

Lim's employment contract was executed through the POEA and subject to the Standard Terms. Those terms include dispute

resolution procedures, which require, *inter alia*, resolving employment claims through arbitration in the Philippines. Section 29 of the Standard Terms states:

> In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrators or panel of arbitrators....

Lim filed this action against OSFI in the United States District Court for the Eastern District of Louisiana, claiming violations of the minimum wage and maximum hour (overtime) requirements of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA). *See* 29 U.S.C. §§ 206, 207. Lim's first amended complaint (before OSFI answered) made this an opt-in collective action, pursuant to 29 U.S.C. § 216(b). Approximately 100 similarly-situated Filipino seamen have opted in.

In its answer, and based on the Standard Terms' arbitration clause, OSFI claimed, *inter alia*, lack of subject matter jurisdiction (Rule 12(b)(1)) and improper venue (Rule 12(b)(3)). OSFI moved to dismiss, claiming: the Standard Terms require arbitration in the Philippines; and the Convention, as implemented

3

at 9 U.S.C. § 201 *et seq.* as Chapter 2 of the Federal Arbitration Act (FAA), requires district court enforcement of the arbitration clause. (Both the Philippines and the United States are signatories to the Convention.)

Plaintiffs responded that, although our court had held the Convention applies to seamen's contracts, *see* **Francisco v. STOLT ACHIEVEMENT MT**, 293 F.3d 270, 273 (5th Cir.), *cert. denied*, 537 U.S. 1030 (2002), the decision was in error and the Convention should not apply. In the alternative, plaintiffs asserted that the arbitration clause is unenforceable for three reasons. First, arbitration has never been required in seamen's wage litigation. Second, the arbitration clause is contrary to Louisiana public policy against a forum selection clause in an employment contract. (An arbitration clause is a subset of a forum selection clause. *See* **Scherk v. Alberto-Culver Co.**, 417 U.S. 506, 519 (1974).) And third, the arbitration clause is invalid under the terms of the Convention, because plaintiffs' FLSA claims are rooted in United States law and can not be resolved through foreign arbitration.

The district court denied dismissal, holding the arbitration clause violated Louisiana law, which signaled a strong public policy against a forum selection clause in an employment contract and rendered the clause unenforceable. Accordingly, the district court stated it did not need to address the other two exceptions advanced by plaintiffs.

4

OSFI moved for rehearing or, in the alternative, for the district court to certify the jurisdiction and venue issues to this court for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). The district court chose the latter and offered the following controlling questions for interlocutory appeal: (1) whether the Convention or the Supremacy Clause of the United States Constitution, Article VI, clause 2, requires enforcement of the arbitration agreement in the employment contract; (2) if so, whether there is an exception, based on Louisiana's anti-forum selection clause statute, LA. REV. STAT. ANN. § 23:921(A)(2) (2004); (3) if the Louisiana statute is not preempted, whether it applies to the employment contract; and (4) if so, whether plaintiffs agreed to, or ratified, the arbitration clause pursuant to the exception in the Louisiana statute. Our court granted OSFI's motion to appeal.

## II.

"As the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question[s] formulated by the district court." *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) (emphasis in original). The above-noted questions presented in the district court's order assist in determining the propriety of the ruling; but they fail to include the other two exceptions claimed in district court by plaintiffs, which are also advanced here and

5

which we address.  (No authority need be cited for the rule that an issue presented in district court, but not ruled on there, may be raised on appeal in support of the ruling being challenged.) OSFI's method of invoking the Convention must be addressed first, however.

## A.

Plaintiffs seek relief because OSFI did not request the district court to stay these proceedings and order arbitration. OSFI responds that, based on the arbitration clause, it properly moved to dismiss, under Rules 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(3) (improper venue).  As noted, foreign arbitration clauses are deemed a "subset of foreign forum selection clauses in general".  *Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528, 534 (1995).  Therefore, analysis of foreign forum selection clauses can be extended to foreign arbitration clauses.  *Id.*

### 1.

Our court has noted, but declined to address, the "enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under FED. R. CIV. P. 12(b)(1) [or] 12(b)(3) ...."  *Haynsworth v. The Corporation*, 121 F.3d 956, 961 (5th Cir. 1997), *cert. denied*, 523 U.S. 1072 (1998). In any event, our court has treated a motion to dismiss based on a forum selection clause as properly brought under Rule 12(b)(3)

6

(improper venue). ***Albany Ins. Co. v. Almacenadora Somex, S.A.***, 5 F.3d 907, 909 & n.3 (5th Cir. 1993). We have also affirmed, without comment on procedural posture, a district court's granting a Rule 12(b)(3) motion to dismiss based on a forum selection clause. ***Mitsui & Co. (USA), Inc. v. Mira M/V***, 111 F.3d 33, 37 (5th Cir. 1997). And, other circuits agree that a motion to dismiss based on an arbitration or forum selection clause is proper under Rule 12(b)(3). *See* ***Continental Ins. Co. v. Polish S.S. Co.***, 346 F.3d 281, 282 (2d Cir. 2003) (affirming Rule 12(b)(3) dismissal in favor of foreign arbitration)*;* ***Lipcon v. Underwriters at Lloyd's, London***, 148 F.3d 1285, 1290 (11th Cir. 1998), *cert. denied*, 525 U.S. 1093 (1999) (motion to dismiss based on forum selection clause in international agreement should be brought under Rule 12(b)(3))*;* ***Argueta v. Banco Mexicano, S.A.***, 87 F.3d 320, 324 (9th Cir. 1996) (Rule 12(b)(3) motion proper method to invoke forum selection clause)*;* ***Frietsch v. Refco, Inc.***, 56 F.3d 825, 830 (7th Cir. 1995) (same).

Although circuits are split on the issue of whether Rule 12(b)(1) or 12(b)(3) is the proper motion for seeking dismissal based on a forum selection or arbitration clause, *see* 5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 1352 (3d ed. 2004), neither side has substantively briefed the merits of the question. Because our court has accepted Rule 12(b)(3) as a proper method for seeking

dismissal based on a forum selection clause, we need not decide whether a Rule 12(b)(1) motion would be appropriate.

2.

Claiming a right to trial to determine whether they are required to arbitrate, plaintiffs rely on 9 U.S.C. § 4 (allowing "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition district court to direct arbitration). Plaintiffs do not explain how this statute applies. Because the issue is not adequately briefed, we decline to address it. *See **United States v. Thames**, 214 F.3d 608, 611 n.3 (5th Cir. 2000); *see also* FED. R. APP. P. 28(a)(9)(A).

B.

Accordingly, we turn to the order under review. We need only address two issues because (1) the Convention and the Supremacy Clause require enforcement of the arbitration clause; and (2) there is no exception to that requirement based on any one of the three advanced by plaintiffs, including Louisiana's anti-forum-selection-clause statute.

1.

The Supremacy Clause provides that laws and treaties arising under the Constitution "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby...." U.S. CONST. art. VI, cl. 2. It goes without saying that, upon the United States

8

signing a treaty and Congress adopting enabling legislation, the treaty becomes the supreme law of the land. *E.g., **Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.***, 767 F.2d 1140, 1145 (5th Cir. 1985). It also goes without saying that whether the Supremacy Clause and the Convention require enforcement of the arbitration clause is a question of law, reviewed *de novo*. *E.g., **Witty v. Delta Air Lines, Inc.***, 366 F.3d 380, 382 (5th Cir. 2004).

In 1970, Congress enacted the Convention's enabling legislation, 9 U.S.C. §§ 201-208 (Convention Act). *E.g.* **Scherk**, 417 U.S. at 520 n.15. If an international arbitration clause falls under the Convention Act, "the Convention requires district courts to order arbitration". **Sedco**, 767 F.2d at 1145; *see also* 9 U.S.C. § 201 ("The Convention ... shall be enforced in United States courts ....").

The Convention applies to international arbitration clauses when "(1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) *a party to the agreement is not an American citizen*". **Francisco**, 293 F.3d at 273 (emphasis added); *see also* 9 U.S.C. § 202 (listing same requirements). In **Francisco**, our court considered a Filipino seaman's employment contract identical to the one at issue and clarified that such contracts "arise[] out of a commercial legal relationship". 293 F.3d at 273. Thus,

9

plaintiffs' contracts are controlled by the Convention: the contracts are in writing; they require arbitration in the Philippines, a signatory to the Convention; they describe a "contractual legal relationship"; and plaintiffs are not American citizens. (Plaintiffs seek reconsideration of our court's holding in *Francisco* that the Convention applies to seamen's employment contracts. Barring a change of law, "[i]t has long been a rule of this court that no panel of this circuit can overrule a decision previously made by another". *Legros v. Panther Servs. Group, Inc.*, 863 F.2d 345, 349 (5th Cir. 1988).)

Because the United States is a signatory to the Convention, and Congress enacted enabling legislation, the Convention is applicable as federal law in this case. Further, unless there is an exception, as discussed below, the Convention requires the arbitration clause in plaintiffs' employment contracts be honored.

2.

Accordingly, we turn to whether there is an exception to the Convention's mandate that the employment claims in question be arbitrated according to the Standard Terms. Of course, whether a forum selection or arbitration clause is enforceable is a question of law reviewed *de novo*. *E.g., Mitsui*, 111 F.3d at 35. Likewise, questions of preemption are reviewed *de novo*. *E.g., Witty,* 366 F.3d at 382.

10

OSFI maintains the Standard Terms' arbitration clause applies without exception to plaintiffs' claims.  Plaintiffs dispute that on three bases.  They maintain:  (1) the clause is unreasonable, and therefore invalid, under the test announced in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (forum selection clause valid unless contravenes strong public policy), because the Louisiana statute evinces a strong public policy against arbitration clauses in employment contracts; (2) the arbitration clause is invalid because arbitration is not warranted in seamen's wage litigation; and (3) their FLSA claims are not arbitrable, so the Convention, by its own terms, does not apply.

a.

Unlike the Convention, Louisiana law *prohibits* employers' use of choice of forum and choice of law clauses in employment contracts:

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void ....

LA. REV. STAT. § 23:921(A)(2).  Again, the Supremacy Clause declares that federal law "shall be the supreme Law of the Land [,] ... any Thing in the Constitution or *Laws of any State* to the Contrary

11

notwithstanding".  U.S. CONST. art. VI, cl. 2 (emphasis added). "Where [state] laws conflict with a treaty, they must bow to the *superior federal policy*." *Zschernig v. Miller*, 389 U.S. 429, 441 (1968) (emphasis added).

i.

OSFI maintains the Convention preempts Louisiana law.  It analogizes that preemption question to those presented in *Southland Corp. v. Keating*, 465 U.S. 1 (1984), and *OPE International, L.P. v. Chet Morrison Contractors, Inc.*, 258 F.3d 443 (5th Cir. 2001).

*Southland* held § 2 of the FAA, which declares arbitration clauses in American contracts "shall be valid, irrevocable, and enforceable", preempted a California statute forbidding arbitration of disputes arising from interstate contracts between franchisors and franchisees.  465 U.S. at 10.  *OPE International* held the FAA preempted a Louisiana statute forbidding arbitration of contracts for public and private works when one party was located, and the work was done, in Louisiana.  258 F.3d at 447.

OSFI relies properly on *Southland* and *OPE*.  "In substance, the Convention replicates the Federal Arbitration Act." *Sedco*, 767 F.2d at 1146.  Both statutes apply to employment contracts in general. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001) (FAA applies to employment contracts other than seamen's and transportation workers' contracts as exempted by § 1); *Francisco*,

12

293 F.3d at 273 (Convention applies to seamen's employment contracts).

*Southland* noted that, in the FAA, Congress "declared a *national policy* favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration". 465 U.S. at 10 (emphasis added). The Louisiana anti-forum-selection-clause statute conflicts directly with the Convention's mandate to enforce arbitration clauses. Applying a straightforward preemption analysis, the Convention, as the "supreme Law of the Land", preempts the directly conflicting Louisiana statute, unless, as plaintiffs claim, it satisfies an exception to the Convention.

ii.

According to plaintiffs, the arbitration clause should not be enforced because it is contrary to strong Louisiana public policy. The Supreme Court has held forum selection clauses in international contracts are "prima facie valid" and should be upheld absent a clear showing of unreasonableness, unjustness, overreaching, or fraud. *Bremen*, 407 U.S. at 10, 15. *Bremen* held a choice of forum clause may be unreasonable when "enforcement would contravene *a strong public policy of the forum in which suit is brought*, whether declared by statute or by judicial decision". *Id.* at 15 (emphasis added). The Convention mirrors this policy concern by allowing a court charged with enforcing an arbitral award to refuse enforcement

13

if "[t]he recognition or enforcement of the award would be contrary to *the public policy of that country*".  Convention, art. V, § 2(b) (emphasis added).

Forum is broadly defined as "[a] court or other judicial body; a place of jurisdiction".  BLACK'S LAW DICTIONARY (8th ed. 2004).  In performing the instant **Bremen** reasonableness analysis, an underlying issue is which forum – the United States or Louisiana – is relevant for purposes of the test.  As they did in district court, plaintiffs assume Louisiana is the relevant forum.  The district court agreed, noting that, although plaintiffs raised claims under a federal statute (FLSA) in federal court, they could have brought them in state court.  It ruled:  "The fortuity (for defendant) of plaintiffs electing to bring their claims in federal court should not exempt defendant from Louisiana laws *intended to apply to employers in this state*".  **Lim v. Offshore Specialty Fabricators, Inc.**, No. 02-2126 (E.D. La. 28 January 2003)(order denying motions to dismiss) (emphasis added).

On the other hand, it is quite understandable that the Convention and its enabling act imply that the forum at issue is national, rather than local.  *Cf.* Convention, art. V, § 2 (a) (allowing a country to refuse enforcement of an arbitral award if the award violates the country's public policy); 9 U.S.C. § 205 (giving federal courts jurisdiction over cases to which the Convention applies, regardless of amount in controversy). Likewise,

14

the Convention envisions the applicable forum to be the signatory country, not individual states within it. *See* Convention, art. XI, § (a) (clarifying that the obligations of a signatory with a federal government are the same as those of a signatory that is a unitary state). Further, for obvious reasons, when analyzing the reasonableness of a choice of forum clause in an international contract, courts do not ignore federal law and policy. *See **Afram Carriers, Inc. v. Moeykens***, 145 F.3d 298, 302-03 (5th Cir. 1998), *cert. denied*, 525 U.S. 1141 (1999); ***Lipcon***, 148 F.3d at 1298-99; ***Dahiya v. Talmidge Int'l, Ltd.***, 371 F.3d 207, 220 (5th Cir. 2004) (DeMoss, J., dissenting).

Because plaintiffs brought FLSA claims in federal court, and the contested clause mandates arbitration in a foreign country (as opposed to a State), the relevant forum is arguably the United States, a signatory to the Convention. On this record, including plaintiffs' not being residents of Louisiana, as discussed *infra*, we need not decide whether the United States is the relevant forum. Accordingly, we will consider both United States and Louisiana public policy in our ***Bremen*** reasonableness analysis.

(a)

Plaintiffs contend the arbitration clause is unenforceable in the light of Louisiana's strong public policy against choice of forum clauses, as evidenced both by the above-quoted statute, LA. REV. STAT. § 23:921(A)(2), and by judicial decision, ***Sawicki v. K/S***

15

*STAVANGER PRINCE*, 802 So. 2d 598 (La. 2002). OSFI relies on the dissent in *Dahiya* to support its response that Louisiana public policy against a choice of forum clause (arbitration clause) in employment contracts does not outweigh the federal policy of enforcing international arbitration clauses.

For obvious reasons, a party opposing, on public policy grounds, enforcement of an international arbitration clause must meet a "heavy burden of proof". *Bremen*, 407 U.S. at 17. "[T]here is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity". *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).

The above-quoted § 23:921(A)(2) of the Louisiana Labor and Worker's Compensation Code, enacted in 1999, prohibits choice of forum or choice of law clauses in *all* employment contracts. *Sawicki*, 802 So. 2d at 603. Section 23:921(A)(2) is a subsection of a statute concerning restraints on business; the Louisiana Supreme Court has held generally that the statute demonstrates "strong Louisiana public policy concerning forum selection clauses". *Id*. at 603. Accordingly, as plaintiffs note, both Louisiana statute and judicial decision evince a policy against enforcement of arbitration clauses in employment contracts.

16

(b)

As has been done for the contrary Louisiana public policy, the federal public policy favoring domestic and international arbitration agreements has been declared by both statute and judicial decision. Repeatedly, Congress has endorsed arbitration clauses, first through passage of the FAA, and then through adoption of the Convention and implementation of the Convention Act. Likewise, federal courts have supported this strong policy in favor of arbitration. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26. In the context of the Convention, the Supreme Court held:

> [C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' [arbitration] agreement, *even assuming that a contrary result would be forthcoming in a domestic context*.

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985) (emphasis added); *see also Scherk*, 417 U.S. at 520 n.15. More specifically, federal courts have endorsed federal arbitration policy by applying the Convention to seamen's employment contracts. *See Francisco*, 293 F.3d at 274; *Bautista v. Star Cruises*, 396 F.3d 1289, 1300 (11th Cir. 2005).

17

In addition, in weighing these competing policy concerns, it must be noted that *plaintiffs' employment contracts do not present the inequities the Louisiana statute was crafted to prevent*. That statute seeks to protect Louisiana citizen-employees from being subjected to litigation in a foreign forum, under laws with which they are not familiar and before a foreign body. *See* Testimony of Representative Jackson, Official Minutes of Louisiana Senate Committee on Labor and Industrial Relations, Hearing on Senate Bill 915 (22 April 1999). Plaintiffs are Philippine residents and citizens. Their employment contracts do not require them to bring claims in a foreign forum, but instead require OSFI to submit to arbitration in plaintiffs' home country, before plaintiffs' countrymen.

In sum, on this record, given the strong federal policy in favor of international arbitration agreements in general, and the application of the Convention to seamen's employment contracts in particular, the overall balance of public policy concerns favors enforcing the arbitration agreements. Plaintiffs do not meet the "high burden of proof" necessary to show public policy renders the arbitration clause unreasonable.

b.

For the second claimed exception, plaintiffs maintain "[a]rbitration has never been required in seamen's wage litigation" and clauses requiring such arbitration are invalid. They cite *U.S.*

18

*Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 357 (1971), which applied § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (LMRA) (providing federal remedy to enforce grievance and arbitration provisions of collective bargaining agreements). *Arguelles* held § 301 did not deprive seamen of their right to assert in federal court wage claims arising under 46 U.S.C. § 596 (now 46 U.S.C. § 10313) (controlling seamen's individual wage claims against employer). *Id.* For the following reasons, *Arguelles* is distinguishable.

First, the claims in *Arguelles* addressed seamen's judicial remedies for denial of contractual wages. *Id.* at 354. Plaintiffs do *not* claim they were not paid according to their contract; instead, they make claims under the FLSA for extra-contractual wages. Also at issue in *Arguelles* was the duty to follow the collective bargaining grievance procedure under the LMRA, a statute and procedure absent here. Finally, while the *Arguelles* court refused to hold § 301 of the LMRA replaced access to courts, the Court did not declare seamen's wages conclusively exempt from arbitration in all situations. *Id.* at 356 (seamen may, if they choose, "use the processes of grievance and arbitration").

c.

Plaintiffs' final claimed exception is that the Convention does not compel arbitration of their FLSA claims because they are not subject to arbitration. OSFI reserves the question of whether the

19

FLSA applies to plaintiffs' claims, but contends that, in any event, they are subject to arbitration.

Article II of the Convention states: "Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration ... concerning a subject matter *capable of settlement by arbitration*"; and "[t]he court of a Contracting State ... shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is ... incapable of being performed". Convention, art. II, §§ 1, 3 (emphasis added). Article V states: "Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that: (a) *the subject matter of the difference is not capable of settlement by arbitration under the law of that country*". Convention, art. V, § 2 (emphasis added).

As noted, "individuals seeking to avoid the enforcement of an arbitration agreement face a high bar", even when the claims at issue are statutory. **Carter**, 362 F.3d at 297. In **Gilmer**, the Supreme Court held federal statutory claims are subject to arbitration unless the party resisting arbitration can show "Congress intended to preclude a waiver of a judicial forum" for resolution of the claims. 500 U.S. at 26. "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration

20

and the [statute's] underlying purposes." *Id.* The FLSA does not preclude arbitration by its terms or legislative history. *Carter*, 362 F.3d at 297. Therefore, plaintiffs must demonstrate an "inherent conflict" between arbitration and the purposes underlying the FLSA. *Gilmer*, 500 U.S. at 26.

Instead of addressing "inherent conflict" directly, plaintiffs maintain arbitration "serves no purpose" because their FLSA claims are "rooted in United States law [and] are incapable of resolution by foreign arbitration". Without deciding whether plaintiffs' claims are subject to the FLSA, *see Haynsworth*, 121 F.3d at 966, we note that the NLRC, the Philippine body charged with arbitrating employment claims under Standard Terms § 29, is statutorily empowered to have "original and exclusive jurisdiction to hear and decide ... the claims arising out of an employer-employee relationship or by virtue of *any law* or contract involving Filipino workers for overseas deployment including claims for actual, moral, exemplary and other forms of damages". Migrant Workers and Overseas Filipino Act of 1995, Republic Act 8042, § 10 (2004) (Phil.) (emphasis added), *available at* http://www.poea.gov.ph/html/ra8042.html. There is no reason to conclude the NLRC could not consider an action arising under the FLSA, *if* that statute applies to plaintiffs' claims.

III.

For the foregoing reasons, the dismissal-denial is **VACATED** and this matter is **REMANDED** to district court for further proceedings consistent with this opinion.

*VACATED and REMANDED*