# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 12, 2023

Lyle W. Cayce
Clerk

———————

No. 22-30412

———————

Servando Paraon Calicdan, *individually, and on behalf of those similarly situated*,

*Plaintiff—Appellant*,

*versus*

M D Nigeria, LLC; Megadrill Services, Limited; Anjalex Investments, LLC; M & D Management, LLC; Michael A. Topham; Wendy Dunn; Dan Topham; Ian Dunn; Judy M. Dunn; Robert P. Dunn Estate,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:21-CV-3283

———————————————————

Before Jones, Dennis, and Willett, *Circuit Judges*.

Per Curiam:[*]

Under Philippine law, all contracts intended to employ Filipino citizens as overseas seafarers must comply with the Standard Terms set by the Philippine Overseas Employment Administration (POEA). One such

———————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30412

term is that the parties must, with limited exceptions, arbitrate any employment disputes before the National Labor Relations Commission (NLRC).

Servando Calicdan, a Filipino national, contracted with a manning agency to work for Megadrill Services, Limited as a seafarer for five months. Calicdan expected to work as a welder on a ship on the outer continental shelf. Instead, he worked on a ship moored in Louisiana waters in what he describes as deplorable conditions. After completing his initial contract, Calicdan entered into a one-month extension and another five-month contract with Megadrill.

After his employment ended, Calicdan sued Defendants[1] for his working conditions and pay under various theories of liability under federal and Louisiana law. Defendants asserted that Calicdan must arbitrate his claims under the Standard Terms incorporated into the employment contracts. The district court, upon the magistrate judge's recommendation, agreed and granted Defendants' motion to compel arbitration and dismissed Calicdan's suit. The court denied Calicdan limited discovery in the process.

Calicdan appeals. He raises several contract-enforcement defenses against the application of the arbitration requirement to his dispute. Alternatively, he asks that we reverse the district court's denial of limited discovery and allow him discovery on the questions surrounding arbitrability.

Calicdan's allegations against Defendants are concerning. But our review is confined to whether the parties have a valid and enforceable

---

[1] The individual defendants are agents or members of one or more of the corporate defendants. Calicdan does not differentiate between Defendants in his briefing.

No. 22-30412

arbitration agreement. Because many of Calicdan's contentions go to the merits, we AFFIRM.

I

Our inquiry into the validity of arbitration agreements in international contracts is "very limited." *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002) (citation omitted), *holding modified on other grounds by Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004); *see also* 9 U.S.C. §§ 201–08. Under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, we must "compel arbitration if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Id.* (citation omitted).

Calicdan only challenges the first requirement—whether there is a written agreement to arbitrate.[2] We hold that there is. The employment agreements themselves lack an arbitration provision. But the agreements incorporate the POEA Standard Terms, which require arbitration.

---

[2] Calicdan also argues that the magistrate judge erroneously construed every factual dispute in favor of Defendants and arbitration. We disagree. Calicdan is correct that whether there is an agreement to arbitrate cannot be weighed with a thumb on the scale in favor of arbitration. *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). But we do not read the magistrate judge's opinion as doing so. As the magistrate judge explained, the operative agreements require arbitration as a matter of general contract law. *See Calicdan v. MD Nigeria LLC*, No. 6:21-CV-3283, 2022 WL 2165638, at *12 (W.D. La. May 17, 2022), *adopted* 2022 WL 2162645, at *1 (W.D. La. June 15, 2022) ("[T]he Court's conclusions were drawn from analyses of legal precedent and undisputed facts, though potential factual discrepancies were noted.").

No. 22-30412

To begin, "[u]nder general contract principles, where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together." *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) (citing 11 WILLISTON ON CONTRACTS § 30:25 (4th ed. 1999)). "[A] separate document will become part of the contract where the contract makes 'clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt.'" *Id.* (quoting 11 WILLISTON § 30:25).[3]

Each of Calicdan's employment agreements state that the agreement will faithfully follow Memorandum Circular No. 10. In turn, Circular No. 10 provides that all employment contracts must follow the POEA Standard Terms. The Standard Terms require arbitration of all employment-related disputes. So through incorporation, each of Calicdan's employment agreements, by expressly referencing Circular No. 10, incorporate the Standard Terms and its arbitration provision.[4] *See One Beacon Ins. Co.*, 648 F.3d at 268.

---

[3] We apply "ordinary contract principles" in determining whether there is an agreement to arbitrate. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003). In other contexts, we have looked to state law in answering that question. *See Banc One*, 367 F.3d at 429 (arbitration under the Federal Arbitration Act). The parties did not brief what forum's law applies. But the parties seemingly agree that Louisiana law applies if we must look to the law of a specific forum. Louisiana courts have recognized incorporation by reference of arbitration agreements. *Dufrene v. HBOS Mfg.*, 03–2201, p. 5–6 (La. App. 4 Cir. 5/28/04), 872 So.2d 1206, 1210–11 (allowing incorporation by reference as long as "the arbitration clause in the contract that is referred to has a reasonably clear and ascertainable meaning") (quotation omitted)).

[4] We have recognized that standard, POEA-approved Philippine seafarer contracts incorporate the POEA Standard Terms. *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 900 (5th Cir. 2005) ("Lim's employment contract was executed

No. 22-30412

Calicdan also knew of the Standard Terms. He signed a copy of the terms with his second five-month term contract. Before that, he had signed dozens of other POEA-approved contracts. Calicdan also received training in both English and Filipino on the Standard Terms. And he does not dispute that the Standard Terms contained an arbitration provision.

Still, Calicdan challenges the applicability of the Standard Terms' arbitration provision, arguing that: (1) Defendants failed to show the requisites for incorporation by reference; (2) even if the Standard Terms were incorporated into the employment contracts, the contracts are voidable because Defendants fraudulently induced him to sign them; (3) at the very least, his extension contract is void because his signature on it was allegedly forged; and (4) public policy warrants allowing Calicdan to proceed in federal court. We address and reject each argument in turn.[5]

A

In arguing that the Standard Terms were not properly incorporated, Calicdan points to Defendants' failure to produce signed copies of the Standard Terms for each employment contract. But we have held that an incorporated document does not have to be attached, much less signed, to be enforceable. *See One Beacon Ins. Co.*, 648 F.3d at 268; *see also Cashman Equip.*

---

through the POEA and subject to the Standard Terms. Those terms include dispute resolution procedures, which require, inter alia, resolving employment claims through arbitration in the Philippines."). The Eleventh Circuit and the Second Circuit have also recognized incorporation by reference to memoranda requiring compliance with the Standard Terms. *See, e.g.*, *Bautista v. Star Cruises*, 396 F.3d 1289, 1293 (11th Cir. 2005); *Pagaduan v. Carnival Corp.*, 709 F. App'x 713, 716 (2d Cir. 2017).

[5] Calicdan seemingly separately argues that the district court erred in adopting the magistrate judge's statement that "without the contracts, the basis for Plaintiff's wage claims is uncertain." 2022 WL 2165638, at *8. We do not take this to be an independent holding and thus do not address it as a separate point of error.

*Corp. v. Boh Bros. Constr. Co., L.L.C.*, 643 F. App'x 386, 388 (5th Cir. 2016) (per curiam) ("[Incorporation by reference] may apply even if the second document is unsigned.").[6] Nor does Calicdan dispute that he signed a copy of the Standard Terms when signing his second five-month employment contract. He contends only that he did not see the page containing the arbitration agreement. The lack of a signed copy of the Standard Term for each employment agreement thus does not defeat incorporation.

B

Calicdan next argues that, even if the Standard Terms are incorporated, they cannot apply to him because he did not in fact work as a seafarer. He vigorously contends that his work as a welder on a moored vessel in Megadrill's shipyard is not seafaring work under the 2016 Revised POEA Rules and Regulations Governing the Recruitment and Employment of Seafarers.[7] At this stage in the litigation, however, we can address only whether an arbitration agreement exists. *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004). Calicdan's arguments, by contrast, go to the merits of several of his claims and to his contention that Defendants fraudulently induced him to sign the employment agreements and thus are not properly before us.

Calicdan does not dispute that the parties contracted for him to work as a seafarer. And, as explained above, these employment contracts expressly

---

[6] *Cashman*, of course, "is not controlling precedent," but it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

[7] The Rules' definition of seafarer requires only that a worker be employed "in any capacity on board a ship" to count as a seafarer. The Rules further define "ship" as "a ship other than one which navigates exclusively in inland waters or waters within, or closely adjacent to, sheltered waters or areas where port regulations apply."

incorporated the Standard Terms as governing over the contracts. Calicdan argues that his actual employment, rather than the terms of his employment agreements, must govern whether the Standard Terms apply. Adopting Calicdan's position would practically require us to decide in Calicdan's favor on whether he indeed worked as a seafarer. That is an inappropriate conclusion to draw at this stage. We would also be theoretically assuming that an arbitration provision is inapplicable any time the contract's terms are violated. That swallows any merits analysis.

We are similarly restrained from deciding whether Defendants fraudulently induced Calicdan into signing the employment agreements by allegedly misrepresenting that he would work as a seafarer. The Supreme Court has long held that arguments claiming that the entire contract is void for fraudulent inducement does not go to whether the arbitration agreement itself is void. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (applying the United States Arbitration Act of 1925). We later explained that "[e]ven if this contract had been induced by fraud, the arbitration clause is enforceable unless the plaintiffs were fraudulently induced into agreeing to the *arbitration clause* itself." *Downer v. Siegler*, 489 F.3d 623, 627 (5th Cir. 2007) (emphasis added) (applying the Federal Arbitration Act).

In his opening brief, Calicdan argues that because the "employment contracts were predicated on fraud—Appellees' knowing misrepresentation that Appellant would be employed as a seafarer—the alleged agreements to arbitrate cannot be enforced." This argument tracks his allegations in the First Amended Complaint that Defendants persuaded him to sign the employment agreements knowing that Calicdan would not in fact work as a seafarer. Both go to the fraud surrounding the entire agreement, not the arbitration clause specifically. That is, Calicdan contends only that Defendants lied to get him to sign the *employment contracts*, which

incorporated the Standard Terms. This issue should be "considered by the arbitrator in the first instance."[8] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–56 (2006).

## C

Calicdan argues that, at the very least, he does not have to arbitrate any dispute from the time covered by the *extension* contract because his signature on that contract was forged. Calicdan provides circumstantial evidence of the alleged forgery. Under the Standard Terms incorporated into his *first employment contract*, however, Calicdan remained under its terms "until the seafarer's date of arrival at the point of hire upon termination of his employment pursuant to Section 18 of this Contract." Section 18—"Termination of Employment"—provides: "The employment of the seafarer shall cease when the seafarer completes his period of contractual service aboard the ship, signs-off from the ship and arrives at the point of hire." Calicdan was thus bound under his first employment contract until he returned to the Philippines (his point of hire) regardless of the extension contract. As a result, he must arbitrate any employment disputes arising during that period.

---

[8] Calicdan also asserts that Defendants fraudulently induced him to sign the contracts by misrepresenting the ship number to mask that he would be working on a moored ship. He also argues that Defendants lied to the U.S. Government that Calicdan would be working offshore to obtain Calicdan's entry into the United States. Because the first allegation goes to Defendants' overall alleged scheme to mask Calicdan's true employment as a land-worker so that Calicdan would sign the employment agreements, it similarly fails. As for the second, the magistrate judge found that Calicdan presented no evidence that Defendants defrauded the U.S. during the visa process. *See* 2022 WL 2165638, at *6. And any alleged lies were made to the U.S. Government, not Calicdan. So they cannot be a basis for Calicdan's claim that Defendants lied to *him* to get him to sign any contract.

D

Finally, Calicdan argues that the arbitration agreement should not be enforced because it violates public policy. He contends that the agreement constitutes a prospective waiver of his federal rights, and the arbitration forum is unjust. Neither argument overcomes the "high bar" to avoid enforcement of the arbitration agreement. *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 907 (5th Cir. 2005) (citation omitted).

Calicdan fails to establish that he cannot raise his federal statutory claims in arbitration before the NLRC. Indeed, in *Lim*, we recognized that there is no reason the NLRC "could not consider an action arising under" federal law like the Fair Labor Standards Act, "if that statute applies to plaintiffs' claims." *Id.* at 908. Should the NLRC in fact fail to address Calicdan's federal statutory claims, Calicdan can raise the issue at the award stage. *See, e.g.*, *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1021 (5th Cir. 2015) (prospective-waiver doctrine is likely available at the award-enforcement stage where the tribunal "actually fail[s] to address causes of action under American statutes"); *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654 (9th Cir. 2009) (same).

Nor does Calicdan try to show that "Congress intended to preclude a waiver of a judicial forum" for resolution of his federal statutory claims. *See Lim*, 404 F.3d at 907. Such a showing is generally required to exempt a federal statutory claim from a binding arbitration agreement. *Id.* Thus, Calicdan has not shown that the arbitration agreement constitutes a prospective waiver of his federal rights.

Calicdan also has not met the "heavy burden of proof" to avoid arbitration for public policy reasons. *Lim*, 404 F.3d at 905. We have held many times that the NLRC is an acceptable forum for arbitration. *E.g.*, *Asignacion*, 783 F.3d at 1021–22 (reversing district court and requiring

No. 22-30412

enforcement of NLRC arbitration award); *Lim*, 404 F.3d at 908. "These decisions create a nearly airtight presumption that [NLRC] is an available forum." *In re Ford Motor Co.*, 591 F.3d 406, 413 (5th Cir. 2009). Calicdan does not present any changed circumstances showing that NLRC is no longer a valid forum. *See id.* His complaints about travel, affordability, and lack of process are matters of private concern, not public policy, and fail for that reason. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013). Calicdan has not established that requiring him to arbitrate before the NLRC violates public policy.

## II

Calicdan alternatively asks us to reverse the district court's denial of limited discovery and remand the case for discovery on any factual dispute about arbitrability. We review discovery orders for abuse of discretion and affirm if the order is reasonable. *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492 n.15 (5th Cir. 2003); *see also Ameriprise Fin. Servs., Inc. v. Etheredge*, 277 F. App'x 447, 449 (5th Cir. 2008) (applying *Patterson* to limited discovery on arbitration). The district court's discovery denial was reasonable as the question of arbitrability can be resolved on the law and the undisputed facts. The district court thus did not abuse its discretion.

\*     \*     \*

We AFFIRM.