# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2024

Lyle W. Cayce
Clerk

———————————

No. 23-30305

———————————

Marek Matthews,

*Plaintiff—Appellant*,

*versus*

Tidewater, Incorporated; Tidewater Crewing, Limited,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-1530

———————————————————————

Before Barksdale, Southwick, and Graves, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Plaintiff Marek Matthews alleges that, during the course of his employment with the two Defendants, he was exposed to toxic chemicals resulting in end-stage renal failure, stage IV cancer, and other injuries. The district court found Matthews's employment contract contained a valid and enforceable forum-selection clause requiring litigation in England. The court accordingly dismissed the case on *forum non conveniens* grounds.

We AFFIRM.

No. 23-30305

## FACTUAL AND PROCEDURAL BACKGROUND

This suit stems from injuries Matthews sustained while working as a seaman and captain for Tidewater Crewing, Ltd., on offshore supply vessels allegedly managed by Tidewater, Inc. (collectively, "Defendants" or "Tidewater"). Tidewater, Inc., is incorporated in Delaware, and its principal place of business is in Texas. Tidewater Crewing, Ltd., is incorporated and maintains its principal place of business in the Cayman Islands. Although Matthews previously resided in Honduras, he was approved in 2007 for permanent residency in the United States and is a Florida resident.

From the start of his employment in 1982 until 2016, Matthews alleges he suffered various injuries while working on Tidewater's assignments in the Red Sea. Specifically, Matthews contended he was exposed to hazardous chemicals such as benzene, xylene, and methanol on Tidewater's supply vessels. According to Matthews, Tidewater did not provide him with any means of protection from the alleged chemical exposure. Among other alleged injuries, Matthews sustained end-stage renal disease, kidney failure, and prostate cancer.

Before departing on any months-long shift, Matthews would sign a "Working Agreement" that governed the terms of his employment with Tidewater. The Working Agreement required that any dispute arising out of Matthews's employment with Tidewater be litigated in the High Court of Justice in London, England.

In February 2021, Matthews and other plaintiffs filed suit against Tidewater in Louisiana state court[1] alleging various claims of negligence,

---

[1] The plaintiffs originally sued Tidewater, Inc., Tidewater Crewing, Ltd., Tidewater Marine International, Inc., and Tidewater Marine LLC. When the federal

unseaworthiness, maintenance and cure, and damages under the Jones Act, 46 U.S.C. § 30104, and United States general maritime law. In August 2021, Tidewater removed the suit to the United States District Court for the Eastern District of Louisiana. In October 2021, Tidewater moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and, alternatively, under the doctrine of *forum non conveniens*.

On February 28, 2023, the district court granted Tidewater's motion to dismiss based on *forum non conveniens*. The court determined the forum-selection clause was valid and enforceable, and the *forum non conveniens* public-interest factors favored a foreign forum. The court did not consider Tidewater's Rule 12(b)(6) arguments.

Matthews filed a motion under Rule 59(e) and requested the court reconsider its dismissal order because the forum-selection clause was unenforceable. On April 25, 2023, the district court denied the motion. Matthews now appeals the district court's February 28 and April 25 orders.

## DISCUSSION

Before considering the merits of Matthews's arguments, we first clarify which district court order Matthews appeals. Matthews's notice of appeal stated he appeals both the court's dismissal order and the Rule 59(e) motion denial order. In his appeal brief, Matthews neither mentions the Rule 59(e) motion nor contends the court erred in denying the motion. He does state twice that the district court's dismissal constitutes "manifest legal error." Matthews engages in a discussion of the court's February dismissal

---

district court dismissed the case following removal from state court, Tidewater, Inc., and Tidewater Crewing, Ltd., were the remaining defendants and Matthews was the remaining plaintiff.

order and argues several times that the court erroneously dismissed his case on *forum non conveniens* grounds.

During oral argument, Matthews's counsel insisted that Matthews is appealing the merits of the Rule 59(e) motion denial. In other words, Matthews intended to file the appeal on the basis that the district court committed "manifest error in the law" in denying the Rule 59(e) motion. Our conclusions do not turn on whether both orders were appealed, and we will review both.

Because Matthews filed his notice of appeal after the district court denied his Rule 59(e) motion, "the ruling on the Rule 59(e) motion merges with the prior determination, so that the reviewing court takes up only one judgment." *Banister v. Davis*, 590 U.S. 504, 509 (2020) (citing 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2818, at 246 (3d ed. 2012)). "The court thus addresses any attack on the Rule 59(e) ruling as part of its review of the underlying decision." *Id.*

## I.　*The district court's dismissal order*

We begin with the district court's grant of Tidewater's motion to dismiss. Matthews's counsel asserted during oral argument in this court that the forum-selection clause is unenforceable under the Jones Act. The Jones Act was not one of the issues briefed on appeal, and accordingly we will not address it. *See United States v. Bowen*, 818 F.3d 179, 192 n.8 (5th Cir. 2016). Instead, we consider whether the forum-selection clause is unenforceable in light of Louisiana public policy and Matthews's physical conditions.

The parties disagree on the proper standard of review of the district court's *forum non conveniens* dismissal. Matthews insists this court should review the district court's determination of the forum-selection clause's enforceability *de novo*. Tidewater admits that "[w]hile a district court's

determination that a forum selection clause is mandatory and enforceable is reviewed *de novo*, its decision on the *forum non conveniens* balancing test is reviewed for abuse of discretion."

In 2016, we addressed this exact issue: "We review the district court's interpretation of the [forum-selection clause] and its assessment of that clause's enforceability *de novo*, then we review for abuse of discretion the court's balancing of the private- and public-interest factors." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016). Therefore, our review of the district court's analysis of the forum-selection clause's enforceability is *de novo*.

Matthews argues the forum-selection clause in the Working Agreement is neither valid nor enforceable. The Supreme Court has held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," and then outlined a modified framework. *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60, 63–65 (2013). Traditionally, when performing a *forum non conveniens* analysis, a court "must determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum." *Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 300 (5th Cir. 2016). "[A] valid forum-selection clause simplifies this analysis." *Id.* "'First, the plaintiff's choice of forum merits no weight' because, by contracting for a specific forum, 'the plaintiff has effectively exercised its "venue privilege" before a dispute arises.'" *Id.* (quoting *Atlantic Marine*, 571 U.S. at 63). "Second, the private-interest factors 'weigh entirely in favor of the preselected forum,' so that the 'district court may consider arguments about public-interest factors only.'" *Id.* (quoting *Atlantic Marine*, 571 U.S. at 64).

No. 23-30305

"If the forum-selection clause is both mandatory and enforceable, the court must decide whether, under *Atlantic Marine*'s balancing test, the case is one of the rare cases in which the public-interest [*forum non conveniens*] factors favor keeping a case despite the existence of a valid and enforceable [forum-selection clause]." *Noble House, LLC v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 249 (5th Cir. 2023) (alterations in original) (quotation marks and citation omitted).

The district court here determined the forum-selection clause was mandatory. It examined the public-interest factors only after concluding the clause was enforceable. On appeal, Matthews neither disputes the mandatory nature of the clause nor challenges the district court's consideration of the *forum non conveniens* public-interest factors. Thus, all we need consider is whether the clause is enforceable, which is determined "under the 'unreasonable under the circumstances' framework." *Id.*

A plaintiff may demonstrate a forum-selection clause is unreasonable under the circumstances if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (quotation marks and citation omitted). Matthews "bears a heavy burden of proof" to demonstrate the clause's unreasonableness. *Id.* (quotation marks and citation omitted).

6

No. 23-30305

Matthews relies on the second and fourth reasonableness exceptions. We limit our review to these contested exceptions.

Beginning with the second reasonableness exception,[2] Matthews does not dispute the fairness of England as a forum,[3] only the inconvenience of traveling to England on account of his health conditions. Matthews argues these conditions render the forum-selection clause unreasonable "cumulatively under the circumstances."

Matthews's health conditions do not prevent the enforceability of the forum-selection clause. *See Calix-Chacon v. Glob. Int'l Marine, Inc.*, 493 F.3d 507, 515 (5th Cir. 2007). Notably, plaintiffs may remotely litigate in foreign forums because of modern technology. *Id.* We need not examine the logistics of litigation in England. We simply conclude Matthews's health conditions, though serious, do not give him a right to bring suit in Louisiana state court. His physical limitations do not render the forum-selection clause unreasonable under the circumstances.

Matthews primarily focuses on the fourth reasonableness exception, arguing the forum-selection clause is invalid and unenforceable[4] because it

_____

[2] Matthews does not specifically couch this argument under the second reasonableness exception. However, because Matthews is essentially arguing his health conditions constitute such an inconvenience as to render the forum-selection clause unenforceable, we examine this argument within the context of the second exception.

[3] As the district court observed, we have deemed England a "fair and impartial" forum. *Haynsworth*, 121 F.3d at 967. Thus, an English forum will likely not present such grave inconvenience or unfairness as to prevent the enforceability of the forum-selection clause or deprive Matthews of a remedy.

[4] Matthews attempts to distinguish between the forum-selection clause's *validity* and its *enforceability*. This court has not made a "distinction between validity and enforceability," and "treat[s] those words as synonyms in the forum-selection clause context." *Barnett*, 831 F.3d at 302. Accordingly, we decline to determine whether these are separate issues and only examine whether the forum-selection clause contravenes a

runs afoul of Louisiana public policy.  The Supreme Court has stated that a forum-selection "clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."  *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972).  The Court further clarified, "the forum clause should control absent a *strong showing* that it should be set aside."  *Id.* (emphasis added).  Matthews insists Louisiana is the relevant forum, not the federal forum where the suit was removed.  This court, Matthews argues, must therefore look to Louisiana public policy delineated by state statute and by state judicial decisions to determine the enforcement of the forum-selection clause.  Matthews relies in part on this Louisiana statute:

> The provisions of every employment contract or agreement . . . which . . . includes a choice of forum clause or choice of law clause in an employee's contract of employment . . . shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

La. R.S. § 23:921A(2).  Because he did not ratify the forum-selection clause after the onset of his health conditions, Matthews argues "Louisiana law renders the forum selection clause a nullity and invalid."

Matthews then argues that Section 23:921A(2) constitutes strong public policy against the enforcement of forum-selection clauses in Louisiana, relying on statements in *Sawicki v. K/S Stavanger Prince*, 802 So. 2d 598 (La. 2001).  In *Sawicki*, a seaman was injured during the course of his

---

strong public policy of the forum outlined in the reasonable-under-the-circumstances analysis.  *See id.* at 303.

employment. *Id.* at 600. He filed suit in Louisiana state court, but the defendants alleged the action should be dismissed because the plaintiff had signed a collective bargaining agreement with a forum-selection clause mandating litigation in a foreign forum. *Id.* at 600–01.

First, the Louisiana Supreme Court acknowledged the United States Supreme Court's holding that forum-selection clauses should be enforceable unless they run afoul of "a strong public policy of the forum." *Id.* at 602 (quoting *Bremen*, 407 U.S. at 15). The Louisiana court then concluded that "La. Rev. Stat. 23:921A(2) is an expression of strong Louisiana public policy concerning forum selection clauses." *Id.* at 603. It remanded the case to the district court to apply Section 23:921A(2) and determine whether the seaman "expressly, knowingly, and voluntarily" ratified the agreement after his injury. *Id.* at 606.

The question thus becomes whether we can enforce the forum-selection clause even though it contradicts Louisiana's strong public policy. The underlying issue framing this question is whether the Supreme Court in *Bremen* was referring to the state forum, federal forum, or both, when it stated a forum-selection "clause should be held unenforceable if enforcement would contravene a strong *public policy of the forum in which suit is brought*." 407 U.S. at 15 (emphasis added).

We have previously confronted these issues when considering how Section 23:921A(2) affects an arbitration clause in international employment contracts. *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 901 (5th Cir. 2005). In *Lim*, seamen brought suit in the United States District Court for the Eastern District of Louisiana claiming the defendant violated wage requirements. *Id.* at 900. The defendant moved to dismiss arguing the plaintiffs' employment contracts required arbitration in the Philippines. *Id.*

No. 23-30305

This court examined whether the defendant could enforce an arbitration clause[5] in the plaintiffs' employment contracts in light of "Louisiana's anti-forum-selection clause statute." *Id.* at 901 (citing La. R.S. § 23:921A(2)). The *Lim* court recognized that in considering the *Bremen* analysis, it was faced with whether the United States or Louisiana was the relevant forum. *Id.* at 905. It first defined "[f]orum . . . as '[a] court or other judicial body; a place of jurisdiction.'" *Id.* (second alteration in original) (quoting BLACK'S LAW DICTIONARY (8th ed. 2004)). The *Lim* court acknowledged the definition could encompass either a federal or state forum and accordingly refrained from "decid[ing] whether the United States [was] the relevant forum." *Id.* Consequently, it "consider[ed] both United States and Louisiana public policy in [its] . . . *Bremen* reasonableness analysis." *Id.*

The *Lim* court concluded "the overall balance of public policy concerns favor[ed] enforcing the arbitration agreements," even considering Louisiana's public policy in Section 23:921A(2) and in *Sawicki*. *Id.* at 906. The plaintiffs, therefore, could not overcome the "high burden of proof" to demonstrate the agreements were unreasonable. *Id.*

Just as in *Lim*, we, too, decline to determine the relevant forum and examine both Louisiana and federal public policy. Section 23:921A(2) constitutes strong public policy against the enforcement of forum-selection clauses that are not ratified after a plaintiff sustains injuries giving rise to the suit. *Sawicki*, 802 So. 2d at 606. Turning to federal public policy, "forum selection clauses in admiralty cases are presumptively valid and enforceable." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir. 1998). "To overcome the presumption that the forum selection

---

[5] "An arbitration clause is a subset of a forum selection clause." *Lim*, 404 F.3d at 901 (citing *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 (1974)).

clause is enforceable, the party challenging the clause must make a *strong showing* that the clause is unreasonable." *Id.* (emphasis added) (quotation marks and citation omitted). The *Bremen* Court warned that "much uncertainty and possibly great inconvenience to both parties could arise" if parties could choose to bring suit in any jurisdiction where injuries could occur or where a party may reside instead of enforcing a forum-selection clause according to how the parties contracted. 407 U.S. at 13. The enforcement of maritime forum-selection clauses eliminates "all such uncertainties by agreeing in advance on a forum acceptable to both parties [and] is an indispensable element in international trade, commerce, and contracting." *Id.* at 13–14.

It is true that the plaintiffs in *Lim* were not Jones Act seamen as Matthews claims to be in his complaint. The *Lim* plaintiffs were disputing an arbitration clause instead of a forum-selection clause. The distinctions, however, are inapposite to our analysis here. The similarities are more important. The present case, as did *Lim*, involves a plaintiff who is not a Louisiana resident and an international employment contract requiring litigation in a foreign forum. We also stress Matthews's lack of connections to Louisiana. Matthews worked for Tidewater, Inc., a Delaware corporation, and Tidewater Crewing, Ltd., a Cayman Islands corporation. He filed suit for injuries sustained outside the United States while servicing Egyptian oil wells in the Red Sea. Further, just as the *Lim* court observed, Section 23:921A(2) protects Louisiana *citizens* from being forced to litigate their case in a foreign forum. 404 F.3d at 906. Matthews is not a Louisiana citizen and has scant, if any, connections to Louisiana. He, therefore, is not the object of the statute. *See id.*

We recognize the forum-selection clause contravenes the strong public policy of Louisiana. We are, however, wary of creating any inconsistency or unpredictability that federal public policy so adamantly

11

strains to prevent. Louisiana public policy conflicts with and frustrates the federal public policy's presumption of validity and arguably perpetuates the uncertainties *Bremen* warns against. Even if Louisiana's public policy is relevant under a *Bremen* analysis, its particular application in this case does not overcome the federal public policy's presumption of a maritime forum-selection clause's validity.

Matthews fails to make a "strong showing" the clause is unreasonable under the circumstances; Louisiana public policy and his health conditions do not outweigh the presumption of enforcement under federal public policy. *See Bremen*, 407 U.S. at 15. The forum-selection clause is thus reasonable, and, consequently, valid and enforceable.

The district court did not err in dismissing Matthews's case on *forum non conveniens* grounds and appropriately considered the *forum non conveniens* public-interest factors under *Atlantic-Marine*'s modified test.

## II.    *The district court's Rule 59(e) motion denial*

"[T]his court reviews the denial of a Rule 59(e) motion only for abuse of discretion."[6] *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019) (quotation marks and citation omitted). "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (alteration in original) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). A Rule 59(e) motion to alter a

---

[6] Though "the district court considered the materials attached" to Matthews's Rule 59(e) motion, we decline to review the court's denial *de novo*. *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004). In this circuit, we review denials of Rule 59(e) motions for reconsideration *de novo* when a district court grants summary judgment and considered the motion's materials. *See id.* Here, because the district court granted Tidewater's motion to dismiss, abuse-of-discretion review is appropriate.

judgment "is an extraordinary remedy" that should be granted "sparingly." *Id.*

The district court first determined that "every argument raised in [Matthews's] [m]otion could have been raised earlier by [Matthews] in response to [Tidewater's] [m]otion to [d]ismiss."[7]　Indeed, under our precedent, the district court was correct in concluding Matthews's "[m]otion could be summarily denied on that ground alone" as he could have raised his contentions before the district court's dismissal order. *Templet*, 367 F.3d at 479; *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).

The district court, however, continued to the merits of the motion. We will as well. In his Rule 59(e) motion, Matthews first argued the forum-selection clause is unenforceable "because it violates the strong public policy of protecting Jones Act seamen."　He next insisted the clause is unenforceable under Louisiana's public policy and requiring Matthews to litigate his suit in England is "onerous and prejudicial" given his deteriorated health.　The district court had already carefully considered the forum-selection clause's enforceability in its dismissal order, and concluded the clause was valid and enforceable — a conclusion with which we agree.

As previously stated, we decline to address the merits of the district court's rejection of Matthews's Jones Act argument as it was not briefed on appeal. *See Bowen*, 818 F.3d at 192 n.8. Given the district court's thorough consideration of his Rule 59(e) motion arguments and its correct analysis in the dismissal order, Matthews has not identified a manifest error of law concerning the enforceability of the forum-selection clause.　AFFIRMED.

---

[7] The district court, on two separate occasions, advised *both* sides they could seek leave to file supplemental briefing on Tidewater's motion to dismiss.